Carroll
No. 82-326

JOHN M. BIGGS & a.

v.

THE TOWN OF SANDWICH & a.

January 6, 1984

*Sulloway, Hollis & Soden,* of Concord (*Stephen M. Duprey* and *Eleanor H. Holmes* on the brief, and *Mr. Duprey* orally), for the plaintiffs.

*Nighswander, Martin, KillKelley & Kidder P.A.,* of Laconia (*Walter L. Mitchell* on the brief and orally), for the defendants.

BATCHELDER, J. The plaintiffs appeal from a decree of the Superior Court (*Wyman*, J.) which approved the Master's (*Harold D. Moran*, Esq.) recommendation to affirm the Sandwich Zoning Board of Adjustment's denial of the plaintiffs' request for a building permit and subsequent request for a variance. The superior court also approved the master's recommendation to deny the plaintiffs' request for damages resulting from inverse condemnation of their property. We affirm.

In the latter part of 1979, the Sandwich Conservation Commission considered a wetlands ordinance for presentation to the 1980 town meeting. Designed to preserve the ecological balance of the wetlands, the proposed ordinance contained the requirement that all septic tanks and leachfields be set back one hundred and twenty-five feet from any wetlands as defined in the ordinance. Subsequent to two public hearings, notices of which were published in a local newspaper, the town passed the ordinance on March 11, 1980.

Meanwhile, on December 24, 1979, the plaintiffs, John and Margaret Biggs, purchased approximately twelve acres of land which consisted of two acres of dry land bordered on three sides by wetlands. Informed of the proposed wetlands ordinance, the plaintiffs made their purchase and sale agreement subject to a "satisfactory septic tank location compatible with reasonable house location." The field work for the design of the plaintiffs' septic system commenced on December 27, 1979, and on January 29, 1980, the plan was approved by the New Hampshire Water Supply and Pollution Control Commission, as required by RSA 149-E:3. Construction of the septic system began in February and was finished in March 1980.

Approximately one year later, the plaintiffs applied for a building permit as required by the building code adopted at the 1981 town meeting. On May 6, 1981, the town selectmen denied the building permit because the plaintiffs' septic tank was located approximately seventy-five feet from the wetlands and thus did not conform with the wetlands ordinance.

The plaintiffs appealed to the Sandwich Zoning Board of Adjustment (ZBA), see RSA 31:69, and, after a hearing in June 1981, the ZBA affirmed the town selectmen's denial of a permit. After a rehearing, the ZBA again affirmed the denial of the permit. The plaintiffs then appealed to the superior court.

The plaintiffs subsequently filed a petition for a variance from the one-hundred-and-twenty-five-feet setback requirement. After a hearing in September 1981, the ZBA denied the petition on the ground that to grant the variance would violate the spirit of the wetlands ordinance. The ZBA denied the plaintiffs' petition for a rehearing on

October 15, 1981. The plaintiffs appealed the ZBA's denial of a variance, and the two appeals were consolidated before the superior court.

After a hearing in March 1982, the master concluded that the decisions of the ZBA were neither unlawful nor unreasonable. He further ruled that even if the rule of inverse condemnation was applicable in this case, the plaintiffs were not proper parties because of their lack of good faith in proceeding with the construction of the septic system and because the repurchase agreement protected them from suffering any compensable damage. The superior court affirmed the master's findings and conclusions.

The plaintiffs have appealed from the superior court decision, arguing that the ZBA erred as a matter of law in denying their building permit; that the plaintiffs have a vested right to complete their building project; that the record does not support the ZBA's denial of the requested variance; and that the application of the wetlands ordinance results in a taking of the plaintiffs' land for which they should be compensated.

First, the plaintiffs argue that the ZBA, in relying on RSA 156:3-a (Supp. 1981) to deny the building permit, erred as a matter of law. RSA 156:3-a (Supp. 1981) provides that

> "The building inspector shall not issue any building permit where application for such permit is made after the first legal notice of proposed changes in the building code has been posted pursuant to the provisions of RSA 156-A:1-a, I or 156-A:1-b, or the first legal notice of proposed changes in the zoning ordinance has been posted pursuant to the provisions of RSA 31:63 or RSA 31:63-a, if the proposed changes in the building code or the zoning ordinance would, if adopted, justify refusal of such a permit."

The plaintiffs argue that at the time the wetlands ordinance was being considered, there was no building code in effect in the town of Sandwich and, therefore, RSA 156:3-a (Supp. 1981) was inapplicable in this case. The ZBA found however that on September 16, 1975, the town of Sandwich had adopted a flood plains ordinance which provided for a building code, a building inspector and a permit system. The town selectmen were designated as the building inspectors.

The ZBA also found that the flood plains ordinance applied to the construction of the plaintiffs' septic system. The plaintiffs did not request a permit from the town prior to constructing their septic system. When they did apply for a building permit after the passage of the wetlands ordinance and a new building code, the ZBA found

that RSA 156:3-a (Supp. 1981) operated to subject the plaintiffs to the setback requirements of the wetlands ordinance.

■ All findings of a zoning board of adjustment, upon all questions of fact properly before it, are deemed to be prima facie lawful and reasonable, and the decision appealed from may not be set aside except for errors of law, unless the court is persuaded by a balance of probabilities, on the evidence before it, that the decision is unreasonable. RSA 31:78 (Supp. 1981) (recodified by Laws 1983, ch. 447).

■ The master found that the ZBA's orders were reasonable and just, and that the plaintiffs failed to bring forth evidence to overcome the statutory presumption that the ZBA's findings were lawful and reasonable. Our standard of review is not whether we would have found as the master did, but whether there was evidence on which he could reasonably base his findings. *Win-Tasch Corp. v. Town of Merrimack*, 120 N.H. 6, 9, 411 A.2d 144, 146 (1980).

■ After a careful review of the record, we find that the evidence reasonably supports the master's findings. Evidence was presented indicating that a building code, adopted with the flood plains ordinance, was in effect prior to the plaintiffs' initial construction. The plaintiffs built their septic system without first filing an "intent to build" as required by the flood plains ordinance and after having received notice of the proposed adoption of the wetlands ordinance. When they did request a building permit in 1981, the wetlands ordinance and RSA 156:3-a (Supp. 1981) prevented the selectmen, in their capacity as building inspectors, from issuing the permit. The master ruled that RSA 156:3-a (Supp. 1981) was properly invoked by the selectmen because the wetlands ordinance constituted an amendment to the town's zoning ordinances and because the plaintiffs began construction of their sewage system after notice of the proposed adoption of the wetlands ordinance had been posted. We hold that the master's ruling on the applicability of RSA 156:3-a (Supp. 1981) was correct.

■ Second, the plaintiffs argue that they have a vested right to complete their building project. A landowner who, relying in good faith on the absence of any regulation which would prohibit his proposed project, makes substantial construction on his property, acquires a vested right to complete the project despite the subsequent adoption of an ordinance prohibiting the same. *Piper v. Meredith*, 110 N.H. 291, 299, 266 A.2d 103, 109 (1970).

■ The facts here indicate that the plaintiffs were apprised of the proposed zoning changes prior to their initial construction. The

town selectmen informed the plaintiffs' architect that there might be some problems with their project. Also, the plaintiffs' attorney, responsible for negotiating the purchase of the land, was a member of the conservation commission proposing the wetlands ordinance. Consequently, the purchase agreement contained a buy-back provision should the plaintiffs be unable to satisfactorily construct an acceptable septic system. These facts amply support the master's findings and ruling that the plaintiffs took a "calculated risk" in proceeding with their construction and were not relying in good faith on the absence or non-adoption of the ordinance. *See Piper v. Meredith*, 110 N.H. 291, 300, 266 A.2d 103, 109 (1970).

■ Third, the plaintiffs argue that the record does not support the ZBA's finding that to grant a variance would violate the spirit of the ordinance. A decision of the board may not be set aside by the superior court unless there is an error of law, or the court is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable. RSA 31:78 (Supp. 1981) (recodified by Laws 1983, ch. 447). The superior court applied the correct standard of review, found no error of law, and concluded that the plaintiffs had not established by a balance of probabilities that the ZBA's decision was unreasonable.

■ To obtain a variance, the applicant must show: "(1) no diminution in value of surrounding properties would be suffered; (2) granting the permit would be of benefit to the public interest; (3) denial of the permit would result in unnecessary hardship to the owner seeking it; (4) granting the permit would do substantial justice; (5) the use must not be contrary to the spirit of the ordinance." *Moore v. City of Rochester*, 121 N.H. 100, 101, 477 A.2d 10, 11 (1981) (quoting *Ouimette v. City of Somersworth*, 119 N.H. 292, 294, 402 A.2d 159, 161 (1979)).

The ZBA found that the spirit of the ordinance reflects a desire of the townspeople to protect and safeguard the wetlands area from destruction through pollution and damaging use of adjacent areas. The record reveals that the ZBA took several views of the land in question. The members of the ZBA walked the land and examined the pertinent topographical features. They also heard the testimony of the plaintiffs' expert. Based on this evidence, and their own knowledge, experience and observations, *see Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 144 (1981), they concluded that the septic system's proximity to the wetlands created an unacceptable potential for contamination and ecological damage.

■ The master found that the plaintiffs failed to introduce sufficient evidence to overcome the presumption that the ZBA's findings

were reasonable. After a review of the record, we find no error of law and conclude that the record supports the trial court's decision that the plaintiffs had not established by a balance of probabilities that the board's action was unreasonable.

Finally, the plaintiffs argue that the application of the wetlands ordinance results in a taking of their land for which they should be compensated.

The master found that the plaintiffs were aware of the proposed wetlands ordinance and its possible effect on the use of the land they proposed to purchase. The plaintiffs elected to proceed with the purchase, but protected themselves with a repurchase agreement in the event they could not obtain the necessary permits to construct a residence thereon.

The master ruled that the plaintiffs could not properly make a claim for inverse condemnation because of their prior knowledge of the proposed ordinance and their lack of good faith in proceeding with construction of the septic system, and because the repurchase agreement protected them from suffering any compensable damage. The record indicates that any hardship the plaintiffs may have suffered was self-imposed. We hold that the master committed no error of law in so ruling.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.