Rockingham
No. 84-227

TOWN OF PLAISTOW

v.

BRUCE NADEAU

April 19, 1985

440

*Sumner F. Kalman,* of Plaistow, by brief and orally, for the plaintiff.

*David R. Decker,* of Laconia, by brief and orally, for the defendant.

BROCK, J. The defendant appeals from a decree recommended by the Master (*Peter Shapiro,* Esq.) and approved by the Superior Court (*Dalianis,* J.), which permanently enjoins him from using a tract of land in Plaistow for the development of a manufactured housing project which did not comply with local ordinances and State statutes. We affirm.

The defendant, Bruce Nadeau, doing business as Nadeau Properties, entered into a purchase and sale agreement with one Kelley in April 1982, for the purchase of 95 acres of land located partially in a commercial zone but predominantly in a residential zone in Plaistow. The agreement was contingent upon the defendant's obtaining approval from the town for the development of a manufactured housing park. His plan was to place 198 units on leased lots.

On April 21, 1982, the defendant sought the advice of Guy Sawyer, a Plaistow building inspector, concerning how he might proceed to obtain approval for his project. Mr. Sawyer suggested that he go before the Plaistow Planning Board to "kick it around." On April 28, 1982, the defendant, taking the advice of Mr. Sawyer and counsel,

met with the planning board in an informal session, which was later described in the minutes of the meeting as "for discussion only." No notice was given pursuant to RSA 36:23 (Supp. 1983) that the defendant's proposal was to be formally considered at the meeting.

The defendant presented the board with a preliminary plan of the site, and a discussion of thirty to forty minutes ensued. After conferring privately in executive session, the board advised the defendant that if the plan were to be submitted formally, it would not be approved with respect to the residential zone under the Plaistow Zoning Ordinance. They also advised him that the issue of manufactured housing would soon be the subject of a new town ordinance and suggested that the defendant might wish to participate with town officials in giving shape to this ordinance. Within a day or two following this meeting, the defendant began construction on his project, clearing debris from the land and undertaking engineering surveys.

On May 13, 1982, town officials posted a notice concerning a town meeting to consider a new manufactured housing ordinance, but because of a defect in the original posting, a second notice was posted on July 1, 1982. The special town meeting was finally held on September 14, 1982, and an ordinance was adopted that permitted manufactured housing only in residential zones on individually owned lots. During the period from April to September, when the ordinance was finally adopted, the defendant continued to develop his tract of land without a building permit or specific town approval. During the same period the building inspector apparently visited the site on occasion, but he never expressly stated to the defendant that his construction activities were unlawful under existing town ordinances.

On December 3, 1982, the town formally notified the defendant that his project was illegal under the new town zoning ordinance. Finally, in April 1983, the defendant met with town officials to see if he could "work something out," but he was told again that the project was illegal. Nonetheless, he continued to complete eight housing sites and sold some of the units.

In September 1983, the town commenced its legal action against the defendant, but its request for a temporary injunction was denied. After trial in February 1984, the master ruled that the defendant's project was in violation of the Plaistow Zoning Ordinance, Article III, Section 3.2. A permanent injunction was issued against the defendant, restraining him from utilizing the property in question as a manufactured housing park without the requisite State and municipal approvals.

On appeal the defendant claims that the master erred in ruling

against him because: (1) the defendant had acquired a vested interest in the development of his project; (2) the town was barred from bringing an action against the defendant in mandamus because the town had failed to appeal from the planning board's alleged "decision" in April 1982, not to assert its jurisdiction; and (3) the town failed to comply with the manufactured housing statute.

█ It is well established that a landowner who relies in good faith on the absence of a regulation which might prohibit his project, and who has incurred substantial liabilities or has made substantial construction on his project, acquires a "vested right to complete the project despite the subsequent adoption of an ordinance prohibiting the same." *Biggs v. Town of Sandwich*, 124 N.H. 421, 426, 470 A.2d 928, 931 (1984).

In asserting that his rights to complete the development of his project were vested, the defendant argues that the master erred in several respects: (1) he should have found as a fact that the planning board had failed and refused to exercise jurisdiction; (2) he should have determined fully the extent of the defendant's investment in the housing park; and (3) he erred in concluding that the defendant had acted in bad faith.

█ This court will sustain a master's findings of fact if there is evidence from which a reasonable person could have made such findings. *McAllister v. Peerless Ins. Co.*, 124 N.H. 676, 679, 474 A.2d 1033, 1035 (1984). The testimony at trial on the question of whether the town planning board either refused to exercise jurisdiction or did not have jurisdiction is contradictory at best, and depends upon how various witnesses, Mr. Nadeau included, chose to interpret what took place at the meeting. In addition, the record included the minutes of the meeting, which state that the board "could not discuss this plan . . . because it does not in any form meet Town Zoning Requirements." The evidence presented to the master supports a finding that Nadeau's plan was not a formal proposal and that no formal hearing took place. No notice was given under RSA 36:23, I(d) (Supp. 1983). Additionally, the statute provides that "[p]reliminary consultation and review shall not bind either the applicant or the board." RSA 36:23, II(a) (Supp. 1983). The minutes of the meeting indicate, and the defendant concedes, that the planning board showed a willingness to work with him and invited him to attend meetings concerning a revision of the Manufactured Housing Law.

█ Nonetheless, on these facts, the defendant would have us believe that, based on the board's advice at a preliminary discussion, he was entitled to rely on the board's "refusal to exercise jurisdic-

tion." We disagree. The master, having listened to the testimony of those present at the meeting and having considered the minutes of the meeting, could reasonably conclude that the planning board did not refuse to exercise jurisdiction.

Secondly, the defendant argues that the master erred in failing to determine the extent of the defendant's expenditures in the project. The master discussed in some detail the expenditures which the defendant claimed. Testimony and exhibits also indicated that some of the funds were spent *after* the new ordinance had passed and *after* the defendant was put on notice that his project might have been illegal. There was also some discrepancy as to whether a portion of these funds was spent on another project. Although the master did not give a detailed account of *all* of the expenditures, this court need not reverse a master's decision because he did not make detailed findings of fact. *Howard v. Howard,* 124 N.H. 267, 271, 469 A.2d 1318, 1320 (1983).

Accordingly, on the record before him, the master could reasonably have found that the defendant did not incur substantial liabilities which, in the absence of bad faith, would afford him "vested rights" to finish the project. *McAllister v. Peerless Ins. Co., supra* at 679, 474 A.2d at 1035.

In support of his vested rights theory, the defendant also argues that the master erred in concluding that he acted in bad faith. The defendant claims that the master based his decision on the fact that he did not participate in the town meetings as suggested by the planning board, and that he had an *enforceable* duty to do so.

The master's report never refers to an enforceable duty; rather, his findings are based on the fact that the defendant "at all times" acted in bad faith because he had no reasonable basis for believing that his plan was legal.

The defendant conceded that the planning board meeting was "for discussion only." He was also aware or should have been aware that, even under the old ordinance, his plans were illegal. His own employee, Jean Driggers (formerly a member of the planning board) was familiar with the old ordinance and had knowledge of the fact that the town was in the process of voting on a new ordinance. *See Biggs,* 124 N.H. at 426–27, 470 A.2d at 931 (party knew of the zoning changes prior to construction and therefore could not have relied upon the old ordinance). The fact that the defendant did not participate in any of the planning sessions concerning the new ordinance is simply an additional fact upon which the master could reasonably conclude that the defendant had at all times acted in bad

faith. We agree with the master's ruling that the defendant did not acquire "vested rights" in the project because he neither acted in good faith nor incurred substantial liabilities.

Next, the defendant claims that the town was barred from bringing an action against him in mandamus. His argument is based on the theory that the town was an aggrieved party, and should have appealed the decision of the planning board within thirty days. Because we agree with the master that the planning board's suggestions to Mr. Nadeau did not constitute a formal decision and were therefore not binding on the town under RSA 36:23, II (Supp. 1983), this argument is wholly without merit.

Finally, the defendant argues that the town failed to comply with the manufactured housing statute, RSA 31:118, :119 (Supp. 1983), because it does not provide a suitable area in town for construction of a mobile home park or a manufactured housing park. RSA 31:119 (Supp. 1983) provides that:

> "A municipality shall not exclude manufactured housing completely from the municipality, by regulation, zoning ordinance or by any other police power. A municipality which adopts land use control measures shall allow, in its sole discretion, manufactured housing to be located on individual lots in some, but not necessarily all, residential areas within the municipality, or in mobile home parks and subdivisions created for the placement of mobile homes on individually owned lots, or in all 3 types of locations. Manufactured housing located on individual lots shall comply with lot size, frontage requirements, space limitation and other reasonable controls that conventional single family housing in the same area must meet."

Nothing in the Plaistow Zoning Ordinance conflicts with RSA 31:119 (Supp. 1983), which gives broad discretion to a municipality to determine where manufactured housing is to be permitted. *See* RSA 674:32. The statute provides for the location of manufactured housing on individual lots. Such housing must conform to the same requirements as conventional single family housing. The Plaistow Zoning Ordinance, using similar language, states that "[m]anufactured housing, including mobile homes as defined in RSA 31:118 in subdivisions created exclusively and specifically for the placement of same on individually owned lots . . . shall comply with lot size, frontage requirements, space limitations and other reasonable controls that conventional housing in the same area must meet." The ordinance, therefore, does provide for manufactured housing on individually owned lots in the residential area. The

defendant has provided no evidence to support his claim that this ordinance establishes an unreasonable classification for mobile homes or manufactured housing parks.

*Affirmed.*

KING, C.J., did not sit; the others concurred.