TOWN OF CROSS PLAINS, Plaintiff-Respondent,

v.

KITT'S "FIELD OF DREAMS" KORNER, INC.,
Bow-Wow Entertainment LLC, Kitt J. Kalscheur,
Gerald G. Wood, Jr. and Richard Bickel,
Defendants-Appellants,†

Robert D. RELPH, Defendant.

KITT'S "FIELD OF DREAMS" KORNER, INC.,
Plaintiff-Appellant,†

v.

TOWN OF CROSS PLAINS, Defendant-Respondent.

KITT'S "FIELD OF DREAMS" KORNER, INC.,
Plaintiff-Appellant,†

v.

TOWN OF CROSS PLAINS, Defendant-Respondent.

Court of Appeals

*No. 2008AP546. Oral argument July 9, 2009.
—Decided September 24, 2009.*

2009 WI App 142

(Also reported in 775 N.W.2d 283.)

† Petition to Review denied 12/14/09.

On behalf of the appellants, the cause was submitted on the briefs of *Jeff Scott Olson* of *The Jeff Scott Olson Law Firm, S.C.*, Madison. There was oral argument by *Jeff Scott Olson*.

On behalf of the respondent, the cause was submitted on the brief of *Mark Hazelbaker* of *Hazelbaker & Associates, S.C.*, Madison. There was oral argument by *Mark Hazelbaker*.

Before Lundsten, Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. This appeal concerns the nature of the vested interest required for a noncon-

forming use entitled to protection under Wɪs. Sᴛᴀᴛ. § 59.69(10)(a) (2007–08).[1] The circuit court held on summary judgment that the adult entertainment provided at a tavern for twelve days before the effective date of an ordinance amendment prohibiting that use in that zoning district did not constitute a nonconforming use under the statute. The appeal by the owners presents two primary issues. The first is: What, if anything, in addition to a use actually occurring on the effective date of the ordinance amendment, is required to constitute a vested interest for purposes of protection under § 59.69(10)(a)? We conclude that, in order for a use to be protected as a nonconforming use under § 59.69(10)(a), the business owner must have a vested interest in the continuance of that use, meaning that, were the continuance of the use to be prohibited, substantial rights would be adversely affected. In the context of § 59.69(10)(a)—relating to trade and industry—this will ordinarily mean that there has been a substantial investment in the use or that there will be a substantial financial loss if the use is discontinued.

¶ 2. The second issue is: What is the effect of the owners' knowledge of the pending ordinance amendment before they began to make expenditures and incur liabilities to establish the new adult entertainment use? We first conclude that, in order to acquire a vested interest in a use for purposes of Wɪs. Sᴛᴀᴛ. § 59.69(10)(a), the business owner must reasonably rely on the then-existing ordinance when making expenditures and incurring liabilities. In the circumstances of this case, we conclude that, because the owners knew of the pending ordinance amendment before they made

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

expenditures and incurred liabilities to establish the use, they did not reasonably rely on the then-existing ordinance.

¶ 3. Because the owners did not have a vested interest in use of the premises for adult entertainment, we conclude they did not have a nonconforming use entitled to protection under WIS. STAT. § 59.69(10)(a). Accordingly, we affirm.

## BACKGROUND

¶ 4. For purposes of this appeal, the following facts are undisputed. In early 2005, a tavern business called Kitt's Korner was operating in the Town of Cross Plains, Dane County. There was a sports bar and a large open area for volleyball and events such as banquets, weddings, bands, and "fight nights." The zoning classification was C-1 Commercial under the Dane County zoning ordinance. Kitt Kalscheur was the sole owner of the corporation that owned the tavern business, Kitt's "Field of Dreams" Korner (Kitt's), and the sole owner of the entity that owned the real estate.

¶ 5. Beginning in 2004, Bow-Wow Entertainment, LLC, owned and operated an adult entertainment tavern in North Bristol, Dane County. As a result of the opening of this establishment, Dane County officials became aware that Dane County ordinances did not contain any provisions regulating adult entertainment and they began to consider proposals to address this. On January 31, 2005, a county board committee voted to approve an amendment addressing adult entertainment. The proposed amendment was scheduled for action by the county board on February 18, 2005.

¶ 6. Gerald Wood, a managing member of Bow-Wow, testified that he was aware an amendment requiring a zoning change for an adult entertainment tavern

was going to be adopted sometime in early 2005. He began negotiations with Kalscheur that resulted in the execution of an agreement on February 11, 2005, whereby Bow-Wow purchased all of Kitt's stock. Kalscheur continued to own the real estate and leased it to Kitt's, now owned by Bow-Wow.

¶ 7. That same night, February 11, Kitt's began presenting nude dancers in the events area, using the name Hot Rods instead of Kitt's Korner. Wood acknowledged that he started on this date in order to attempt to beat the ordinance amendment and to be "grandfathered." The dancers performed on the stage that had been used for bands. A DJ was hired who brought in his own lights and sound system, which were used in addition to those that were already there. Cubicles were rented for private dance performances and placed in the events area. At some point a portable sign was put outside saying "adult entertainment tonight."

¶ 8. On February 19, 2005, the county board adopted an amendment to DANE COUNTY ORDINANCE § 10.151 (2004–05), and it became effective on February 23.[2] The adult entertainment had by that date been offered every night since February 11 from 5:00 p.m. until 2:00 a.m.

---

[2] We assume for purposes of this opinion that the vote on the amendment was scheduled for and took place on February 19, 2005, and that the effective date of the amendment was February 23, 2005. *See* DANE COUNTY ORDINANCE § 3.06(2) (2002), providing the effective date to be that of publication, and "History" note to DANE COUNTY ORDINANCE § 10.151 (2009), stating "pub. 02/23/05." At the same time, we note that there was some dispute as to both dates. There is conflicting information in the record regarding whether the vote took place on February 17, 18, or 19. Similarly, there is a dispute as to whether the amendment became effective on February 19 or February 23.

¶ 9. On February 21, 2005, Kitt's obtained a building permit and thereafter began remodeling the events area to add balconies, private viewing cubicles, a stage with poles, dressing rooms, lighting, and other improvements. We will assume for purposes of this opinion that this remodeling began on February 21, 2005.

¶ 10. The subsequent dispute between the Town and Kitt's over the lawfulness of the adult entertainment and over the Town's revocation of the liquor license previously granted Kitt's resulted in three separate lawsuits. Besides Kitt's, the parties connected to the tavern are Kalscheur, Bow-Wow, Wood, and Richard Bickel, the other managing member of Bow-Wow. We will refer to all these parties collectively as "the owners" unless it is necessary to identify them separately. The circuit court consolidated the three actions and subsequently dismissed most of the claims on the grounds of mootness because Kitt's no longer operates a business at this location.[3] The remaining claims were the owners' claims that they are entitled to damages under 42 U.S.C. § 1983[4] on various grounds.

We assume the dates that are most favorable to the owners, but also note that our analysis would be the same regardless which of these dates are correct.

[3] The circuit court concluded it was undisputed that Kitt's had been evicted and that a new liquor license was issued to a new tavern business on the same premises.

[4] 42 U.S.C. § 1983. Civil action for deprivation of rights.

Every person who, under color of any statute, ordinance, regulation . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

¶ 11. Each side filed summary judgment motions, although the grounds varied. The dispositive issue for all the motions was whether the adult entertainment offered by Kitt's was a lawful nonconforming use under WIS. STAT. § 59.69(10)(a), thus allowing that use to continue despite the ordinance amendment.[5] On this issue the parties agreed there were no disputed issues of fact, although they had different legal theories. The court concluded that the owners' use of the premises for adult entertainment from February 11, 2005, until the effective date of the ordinance amendment did not create a vested interest in an ongoing adult entertainment business and therefore did not constitute the use necessary for a lawful nonconforming use. Because the circuit court concluded that the adult entertainment use was illegal under the ordinance amendment, it concluded the owners' remaining claims were without merit and dismissed them.

## DISCUSSION

¶ 12. On appeal the owners contend they are entitled to summary judgment because the undisputed facts show there was actual and active use of the tavern as an adult entertainment venue on the effective date of the ordinance amendment and that was sufficient to give them a vested interest in the continuance of that use for purposes of WIS. STAT. § 59.69(10)(a). The Town responds that the undisputed facts show there was not a lawful nonconforming use on that date because the owners had made no substantial investment in the use

---

[5] In a summary judgment motion the owners also challenged the constitutionality of the Dane County ordinance amendment, and the court concluded this issue was not properly before the court. This issue is not before us on appeal.

678

of the premises for adult entertainment, the use was of very recent origin, and it was not yet fully established. Thus, the Town asserts, the owners did not have a vested interest in continuance of that use. In addition, the Town argues that, because the owners knew of the pending ordinance amendment and nonetheless attempted to establish an adult entertainment use before the effective date, the use is not entitled to protection as a lawful nonconforming use.

¶ 13. The owners reply that the only relevant case law holds that a lawful nonconforming use under the statute must be actual and active on the effective date of the ordinance amendment. According to the owners, the considerations of investment, recent origin of use, and motive are irrelevant.[6]

[6] The owners assert they were deprived of the chance to fully present evidence of their investments and commitments because the Town did not argue before the circuit court that investment was necessary in order for a use to be considered a nonconforming use entitled to protection. Although the record indicates that the Town did make such an argument and the owners did have an opportunity to present evidence on this topic, we need not resolve the issue. As we explain later in this opinion, regardless of the amount of the owners' investment or liabilities incurred, the owners did not acquire a vested interest because of their knowledge of the pending ordinance amendment.

The owners also contend that the Town waived its argument that the owners' knowledge of the ordinance amendment before engaging in the new use precludes protection under WIS. STAT. § 59.69(10)(a). It appears the Town did not make this argument below. However, the rule of waiver in this context is one of judicial administration, and we have the power to exercise our discretion to decide issues raised for the first time on appeal. *Umansky v. ABC Ins. Co.*, 2009 WI 82, ¶ 23, 319 Wis. 2d 622, 769 N.W.2d 1. We choose to do so here because an

¶ 14. Because we are reviewing a summary judgment, our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Where, as here, there are no genuine issues of material fact, the issue is: Which party is entitled to judgment as a matter of law? *See* WIS. STAT. § 802.08(2).

I. Vested Interest Requires Substantial Rights

¶ 15. Both parties agree that a business owner must have a vested interest in a use in order for it to be protected as a nonconforming use under WIS. STAT. § 59.69(10)(a). However, they disagree on the criterion for deciding if there is a vested interest. As noted above, the owners contend that we should consider only whether the use was actual and active on the effective date of the new law and that it is irrelevant whether they made any significant investment in that use or had only recently engaged in the use.

¶ 16. The resolution of this appeal requires that we interpret and apply the nonconforming use statute, WIS. STAT. § 59.69(10)(a), in the context of existing case law. The relevant portion of the statute provides:

> (10) Nonconforming uses. (a) An ordinance enacted under this section may not prohibit the continuance of the lawful use of any building, premises, structure, or fixture for any trade or industry for which such building, premises, structure, or fixture is used at the time that the ordinances take effect . . . .

WIS. STAT. § 59.69(10)(a).

issue of law is presented and the owners have had the opportunity to address the issue in their reply brief and at oral argument.

680

¶ 17. While no Wisconsin case has addressed the issue of a vested interest for purposes of a nonconforming use in a fact situation similar to this—that is, where the use is actually occurring on the effective date of the ordinance amendment but is of very recent origin—the case law does provide a framework for our analysis.

¶ 18. The protection of lawful nonconforming uses —that is, uses that are lawful before the enactment of an ordinance but do not comply with the requirements of the new ordinance—arises out of the concern that the retroactive application of zoning ordinances would render their constitutionality questionable. *See State ex rel. Covenant Harbor Bible Camp v. Steinke*, 7 Wis. 2d 275, 283, 96 N.W.2d 356 (1959) ("Legislatures have generally refrained from requiring an immediate discontinuance of nonconforming uses presumably because of doubt that such a provision would be constitutional." (citations omitted)); *Sammarco v. Boysa*, 193 Wis. 642, 645, 215 N.W. 446 (1927) (explaining validity of and need for an exception in city ordinance for existing garages).[7] Thus, the earliest Wisconsin statute enabling counties to pass comprehensive zoning ordinances prohibited the discontinuance of existing trade or industry uses of buildings and premises. *See* Wis. Stat. § 59.97(4) (1923), enacted by 1923 Wis. Laws, ch. 388, § 1.[8]

---

[7] *See also* 4 Edward H. Ziegler, Jr., Rathkopfs The Law of Zoning and Planning 72:3 (Thomas/West 2005-2008), and 2 Patricia Salkin, American Law of Zoning 12:6 (5th ed. 2009).

[8] It appears that the first statute authorizing local government to enact zoning ordinances related to cities, and that statute, too, contained a provision prohibiting the discontinuance of existing trade or industry uses of buildings and premises. *See* Wis. Stat. § 959–17n (1917), enacted by 1917 Wis. Laws, ch. 404, § 3.

¶ 19. When there has not been a statutory prohibition against discontinuing lawful nonconforming uses, the Wisconsin Supreme Court has imposed one. In *Des Jardin v. Town of Greenfield,* 262 Wis. 43, 53 N.W.2d 784 (1952), the statute allowing towns to regulate trailer camps did not provide for the continuation of lawful nonconforming uses and the new town ordinance based on that statute also did not.[9] The court first decided that the trailer owner had a vested interest in the use of the trailer for dwelling purposes at the time the new ordinance was adopted because that use was lawful when he acquired the interest in the land, purchased the trailer, and began living in it. *Id.* at 46. The court then concluded that "the same principles of constitutionality" that apply to zoning ordinances should apply to the trailer camp ordinance. *Id.* at 47. Under these principles, if the ordinance were construed to be retroactive, "it would be unconstitutional and invalid with respect to plaintiff's vested interest in his trailer and the right to continue to use the same on his own land for dwelling-house purposes." *Id.*

¶ 20. The *Des Jardin* court relied on earlier Wisconsin cases that had decided against giving retroactive effect to changes in restrictions on building heights and on uses of property where substantial rights had vested prior to the enactment. *Id.* at 48–49 (citing *Atkinson v. Piper* (*Building Height Cases*), 181 Wis. 519, 532, 195 N.W. 544 (1923); *Rosenberg v. Vill. of Whitefish Bay,* 199

---

[9] WISCONSIN STAT. § 60.74 (1949) authorized towns to enact zoning ordinances where the county had not done so and contained a prohibition against the discontinuation of existing uses, but the separate section authorizing regulation of trailer camps did not contain such a prohibition. *See* § 60.297(2) (1949).

Wis. 214, 217, 225 N.W. 838 (1929); *State ex rel. Schroedel v. Pagels*, 257 Wis. 376, 380, 382–83, 385, 43 N.W.2d 349 (1950)).

¶ 21. These earlier cases concerned financial expenditures to develop a use in reliance on the existing law, rather than a use that already existed as in *Des Jardin*. *See Building Height Cases*, 181 Wis. at 530–34 (holding in one of the consolidated cases that there was a vested interest where the building was begun several years before the enactment and expenses to complete the building were incurred in good faith before the enactment, and in another case that there was a vested interest entitled to protection where a permit had been obtained and construction commenced); *Rosenberg*, 199 Wis. at 217 (holding substantial rights had vested where owner relied on existing ordinance in incurring expenses in plans for an apartment hotel prohibited by an amendment); *Schroedel*, 257 Wis. at 380, 382–83, 385 (affirming circuit court's determination that property owner had acquired protected vested rights by virtue of expenditures for plans and for financing made in reliance on existing ordinance and before attempted change in ordinance).

¶ 22. Although this difference—between an existing use and financial expenditures to develop a use—means that the facts that create a vested interest will differ, *Des Jardin* establishes that in both situations it is the vested interest acquired by the property owner that is the foundation for protection from a change in the law. *Des Jardin*, 262 Wis. at 49–50.

¶ 23. The first two cases decided after *Des Jardin* that address a statutory nonconforming use provision do not cite to prior case law or refer to a vested

interest.[10] In *Sohns v. Jensen*, 11 Wis. 2d 449, 457–458, 105 N.W.2d 818 (1960), the court upheld the circuit court's determination that the property owner did not establish a valid nonconforming use for an automobile wrecking yard at the time a zoning ordinance was enacted, concluding that evidence that the owner salvaged automobile parts "on a very limited basis incidental to his garage business" prior to the enactment did not constitute conducting an automobile wrecking yard business. *Id.* at 457.[11] In the next case, *Gabe v. City of Cudahy*, 52 Wis. 2d 13, 17, 187 N.W.2d 874 (1971), the court explained that it was the property owner's burden to prove "that in 1957 when the ordinance was passed, the farm was actually and actively being used for the same purpose for which it is now being used . . . a commercial sand and topsoil operation."[12] The court concluded that the evidence was insufficient to meet this standard because it showed only sporadic removals of sand with no specific evidence that the use existed in 1957. *Id.* at 17–18.

---

[10] In *State ex rel. Morehouse v. Hunt*, 235 Wis. 358, 360–61, 291 N.W. 745 (1940), a case decided before *Des Jardin v. Town of Greenfield*, 262 Wis. 43, 53 N.W. 784 (1952), the court did rely on the *Building Height Cases* and *Rosenberg* to conclude that there was a valid nonconforming use under the statue applicable to cities because construction of the building began before the ordinance was enacted. However there is only a brief statement on this point because the disputed issue was whether the originally valid nonconforming use had been abandoned.

[11] Apparently the precedessor to Wis. Stat. § 59.69(10) was the applicable nonconforming use statute in *Sohns v. Jensen*, 11 Wis. 2d 449, 105 N.W.2d 818 (1960), because a county ordinance was at issue.

[12] The applicable statute in *Gabe v. City of Cudahy*, 52 Wis. 2d 13, 187 N.W.2d 874 (1971), was Wis. Stat. § 62.23(7)(h) (1969), the city counterpart to Wis. Stat. § 59.69(10)(a).

¶ 24. The "actual and active" language of *Gabe* was expressly tied to the concept of a vested interest in *Walworth County v. Hartwell*, 62 Wis. 2d 57, 214 N.W.2d 288 (1974). The *Hartwell* court stated that, in addition to proving that the nonconforming use was in existence at the time the ordinance was passed, the property owner must prove that:

> the use of the property prior to the effective date of the ordinance was so active and actual that it can be said he has acquired a "vested interest" in its continuance. If the specific use was not so active and actual and was but casual and occasional, or if such a use was merely accessory or incidental to the principal use, then it cannot be said that the property owner had acquired a "vested interest" in the continuance of such a use and the status of nonconforming use will be denied.

*Id.* at 61 (citing to *Sohns*, 11 Wis. 2d 449; *Gabe*, 52 Wis. 2d 13; 1 Anderson, AMERICAN LAW OF ZONING § 6.27–6.28 at 371–373; 2 Yokley, ZONING LAW AND PRACTICE § 16–2 at 214).

¶ 25. In *Hartwell* the court concluded that the use of the disputed race track before the effective date of the ordinance "was so occasional and sporadic that it cannot be said [the owner] had acquired a 'vested interest' in the continuation of such a use." 62 Wis. 2d at 63.

¶ 26. The *Hartwell* formulation—"so active and actual that it can be said [the owner] has acquired a 'vested interest' in its continuance"—has been repeated and applied in *City of Lake Geneva v. Smuda*, 75 Wis. 2d 532, 538–39, 249 N.W.2d 783 (1977) (concluding that the evidence was insufficient to establish use as a two-family dwelling at the time of the ordinance amendment), and *Waukesha County v. Seitz*, 140 Wis. 2d 111, 114–16, 409 N.W.2d 403 (Ct. App. 1987) (concluding that a resort owner had acquired a vested interest in the marina activities, in existence a year

before the ordinance, because it was one of the related services that together constituted his business).

¶ 27. This case law shows that having a vested interest in the continuance of a use is fundamental to protection of a use under WIS. STAT. § 59.69(10)(a). The "actual and active use" standard tells us that there can be no vested interest if the use is not actually and actively occurring at the time the ordinance amendment takes effect. However, it does not follow, as the owners contend, that *any* use that is actually occurring on the effective date of the amendment is sufficient to give the owner a vested interest in its continued use.

¶ 28. The cases in which the court concluded there was no actual and active use because there had been only sporadic use in the past or because there was no evidence of use at the time the ordinance was effective—*Gabe, Sohns, Hartwell,* and *Smuda*—did not examine what type of use on the effective date would qualify for protection. They had no need to. In *Seitz,* where we concluded there *was* a nonconforming use entitled to protection, our analysis focused on the municipality's argument, which we rejected, that the marina activities were incidental to the use of cottage rentals. *Seitz,* 140 Wis. 2d at 115–16. In that analysis we considered the role of the marina activities in connection with the other services the resort owner provided. *Id.* None of these cases suggest that *any* use actually occurring when the ordinance becomes effective is sufficient to give the owner a vested interest in the continuance of that use.

¶ 29. In describing the rights that have vested and thus created an interest that ought to be protected from a retroactive zoning law or ordinance, Wisconsin courts have used the term "substantial rights". *See Building Height Cases,* 181 Wis. at 532; *Rosenberg* 199

686

Wis. at 217 (citing *Building Height Cases*); *Schroedel*, 257 Wis. at 380, 383 (citing *Rosenberg*); *County of Sauk v. Trager*, 113 Wis. 2d 48, 56, 334 N.W.2d 272 (Ct. App. 1983) (citing *Building Height Cases* and Eugene McQuillen, THE LAW OF MUNICIPAL CORPORATIONS § 20.70 at 174 (3d ed. rev. 1980)); *Hearst-Argyle Stations, Inc. v. Board of Zoning Appeals*, 2003 WI App 48, ¶ 28, 260 Wis. 2d 494, 659 N.W.2d 424 (citing *Trager*).

¶ 30. Because the statutory nonconforming use provisions arise out of the same concern for retroactive application of zoning laws and ordinances, *see supra,* ¶ 18, we see no rationale for defining the vested interest differently when there is a statutory provision. We are convinced that the legislature did not intend to protect a use as a nonconforming use under WIS. STAT. § 59.69(10)(a) unless substantial rights would be adversely affected if the use were discontinued. This reading of the statute is consistent with the principle ·that nonconforming uses are not favored. *See Seitz,* 140 Wis. 2d at 116–17 ("[T]he spirit of zoning is to restrict a nonconforming use and to eliminate such uses as quickly as possible . . .[and this principle] is reflected by the rule that the nonconforming use concept does not cover any activity simply because it takes place on the premises." (citations omitted)).

¶ 31. Accordingly, we conclude that, in order for a use to be protected under WIS. STAT. § 59.69(10)(a), at the time the new ordinance becomes effective, the business owner must have a vested interest in the continuation of that use, meaning that, were the continuance of the use to be prohibited, substantial rights would be adversely affected. In the context of § 59.69(10)(a)—relating to trade and industry—this will ordinarily mean that there has been a substantial

investment in the use[13] or that there will be a substantial financial loss if the use is discontinued. *See* 4 Edward H. Ziegler, Jr., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 72:11 (Thomas/West 2005-2008); 2 Patricia E. Salkin, AMERICAN LAW OF ZONING §§ 12:10 at 12–36, 12:20, & 12:31 at 12–128–9 (5th ed. 2009); 4 E.C. Yokley, ZONING LAW AND PRACTICE § 22–3 at 22–17 (4th ed. rev. 2003).

¶ 32. The owners contend that consideration of the investment made in a new use in deciding if it is entitled to protection under WIS. STAT. § 59.69(10)(a) is unfair to small enterprises that do not have the resources to fully establish a business at the outset and so start out "on a shoestring." We do not agree. As the cases we have cited demonstrate, the determination whether there is a vested interest in a use is made on a case-by-case basis. More specifically, the determination whether there has been a substantial investment in a use or will be a substantial financial loss if the use is discontinued is based on the particular circumstances of the business owner. If, ultimately, the determination is that the investment or the potential loss is not substantial, we see no unfairness in not protecting that continued use.

¶ 33. As noted earlier, the Town argues that, in addition to a lack of substantial investment here, there was no vested interest because of the short period of use and the fact that the full adult entertainment operation was not established before the effective date. We view the longevity of a use and the degree of development of a use to be subsumed in an analysis of what invest-

---

[13] We do not intend to suggest the substantial investment must be financial. *See* Eugene McQuillen, THE LAW OF MUNICIPAL CORPORATIONS § 25.188.20 (3d ed. rev. 2003) (Time as well as money may constitute a substantial investment.).

ments an owner has made, rather than as separate factors. Whether a short period of use or a beginning stage of a use is or is not correlated with a lack of substantial investment depends on the circumstances.

¶ 34. The owners assert that, if we do adopt a standard that involves consideration of their investment in the use of the premises for adult entertainment, our consideration is not limited to the expenses of the performances that took place from February 11 to the effective date of the ordinance amendment. Rather, according to the owners, we must consider in addition the stock purchase and liabilities incurred before the effective date in contemplation of operating an adult entertainment establishment in a remodeled building.

¶ 35. We agree, as a general proposition, that when a new type of use is in its beginning stages, the owner may have a vested interest in continuing the use based on expenditures made and liabilities incurred, even if all the changes contemplated to accommodate the new use are not complete. This conclusion follows from the reasoning of the *Building Height Cases/Rosenberg/Schroedel* line of cases: since the expenditure of funds and other efforts to develop property may create a vested interest subject to protection from a change in zoning or similar regulations, those same factors may serve to create a vested interest in continuing a use of a property.[14]

¶ 36. However, while we agree with this general proposition, whether the owners' investment in the use

[14] Some of the Town's briefing appears to agree with this conclusion but at other times the Town appears to argue that we should consider only the operational expenses from February 11 to the effective date of the ordinance amendment. If the latter is the Town's position, we disagree for the reasons stated in the accompanying text.

here constitutes a vested interest depends upon how we resolve the Towns' assertion that the owners' knowledge of the pending ordinance amendment precludes a vested interest. We turn to that issue now.

## II. Vested Interest Requires Reasonable Reliance on Existing Law

¶ 37. It is undisputed that the expenditures were made and the liabilities incurred after Woods learned that an ordinance amendment was soon to pass that would prohibit adult entertainment in the C-1 district. It is also undisputed that Kitt's started to provide the adult entertainment when it did so that the use would be protected as a nonconforming use. The Town contends that the owners did not reasonably rely on the pre-amendment ordinance in making these expenditures and financial commitments because the owners knew there was going to be a change that would prohibit the new use on the Kitt's Korner premises. According to the Town, without this reasonable reliance or "good faith,"[15] a term some cases use, the owners' financial investment does not create a vested interest in the new use.

_____

[15] As our following discussion reflects, case law sometimes uses the term "good faith" to describe a lack of knowledge that the existing ordinance is going to change. The inference then may be that proceeding with that knowledge to establish a use that will soon be prohibited is "bad faith." However, we do not intend to suggest this is "bad faith" in the sense of dishonest or otherwise blameworthy. We use the terms "reasonable reliance" or "reasonable expectation" in our discussion, unless we are repeating what another court has said. These terms are more precise in this context, and the term "unreasonable" does not convey the disapproval that "bad faith" does.

¶ 38. The owners respond that there is no Wisconsin case law that supports the Town's position and this court should not adopt that position because it will have the effect of limiting business opportunities.

¶ 39. We agree with the Town. We first conclude that Wisconsin case law establishes that there must be reasonable reliance on the existing law in order to acquire a vested interest. We then conclude that reasonable reliance on the existing law is not present where, as here, the owners knew the existing law was soon to change.

¶ 40. Wisconsin case law has consistently treated the owner's reasonable reliance as a critical factor in deciding whether there is a vested right. In the *Building Height Cases*, the court's conclusion that substantial rights had vested in one of the cases was based on the fact that "long before the passage of the act the telephone company *in good faith* not only resolved but actually arranged for the completion of its original plans and to that end had incurred great expense." *Building Height Cases*, 181 Wis. at 532 (emphasis added). In the context of that case, "good faith" means that the owner reasonably relied on the previous state of the law in incurring the expense. In both *Rosenberg*, 199 Wis. at 218, and *Shroedel*, 257 Wis. at 380, the court concluded there were vested interests entitled to protection because the expenditures were made "relying upon" or "in reliance" of the then-existing zoning laws.[16]

---

[16] In *State ex rel. Schroedel v. Pagels*, 257 Wis. 376, 43 N.W.2d 349 (1950), after the property owner had showed his plans to the village but before he made a permit application, the village passed a resolution proposing to change the existing ordinance, and it denied the permit application based on that resolution. *Id.* at 378–380. The circuit court held, and the supreme court affirmed, that the village was estopped from

The necessary implication in both cases is that the reliance was reasonable. In *Lake Bluff Housing Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 175, 540 N.W.2d 189 (1995), the court used the term "reasonable expectation" to describe proceeding in reasonable reliance on the ordinance as it existed at the time and explained that "the theory behind the vested rights doctrine is that a builder is proceeding on the basis of a reasonable expectation" (citations omitted).[17] *See also Hearst-Argyle Stations*, 260 Wis. 2d 494, ¶ 28 n.12 ("The theory behind the vested rights doctrine is that a property owner is proceeding on the basis of a reasonable expectation that his or her modification of the property is in compliance with the then-existing zoning codes.") (citing *State ex rel. Cities Serv. Oil Co. v. Board of Appeals*, 21 Wis. 2d 516, 528–29, 124 N.W.2d 809 (1963)).

¶ 41. It is true that none of the above cases expressly address the significance of the owner's knowledge, or lack thereof, of a pending change in the law. However, the thread running through the cases that protect a use, or development of a new use, from a new statute or ordinance prohibiting the use is that it is unfair to deprive persons of the benefits of their investments when at the time they made them they were reasonably relying on the existing law. *See Building*

---

applying the new ordinance to the property owner because he had acquired a vested interest before the attempt to change the ordinance. *Id.* at 381, 385.

[17] The application of "reasonable expectation" to the particular facts in *Lake Bluff Housing Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 175, 182, 540 N.W.2d 189 (1995), is not helpful to our discussion here because the lack of reasonable expectation in that case was based on deficiencies in the permit under the prior law.

*Height Cases,* 181 Wis. at 531 ("Every law that takes away or impairs rights that have vested under existing laws is generally unjust . . ."); *Rosenberg,* 199 Wis. 2d at 217 (application of the new ordinance would "unreasonably injure" substantial rights that had vested prior to the enactment of the ordinance); *Des Jardin,* 262 Wis. at 48–49 (citing to both *Building Height Cases* and *Rosenberg* on these points).

¶ 42. The fairness analysis is significantly altered when the owners know before they undertake to establish a new use that an ordinance amendment will soon prohibit the use in that zoning district. The owners here were aware, before they began making investments and incurring liabilities to establish an adult entertainment bar in the premises previously known as Kitt's Korner, that this use was soon to be prohibited. They nonetheless proceeded, with the goal of creating, before the effective date of the ordinance amendment, a use that would constitute a lawful nonconforming use. Thus, they relied not simply on the existing zoning but on that in conjunction with the nonconforming use statute. If the ordinance amendment is enforced against the owners, the financial loss will not be the result of a change in the zoning they had no notice of and could not reasonably anticipate. It will be the result of misapprehension of the legal protection afforded by the nonconforming use statute.

¶ 43. The owners' expectation that they could establish a lawful nonconforming use if there was adult dancing performed on the premises as of the effective date of the ordinance, even though they knew about the ordinance amendment, is not a reasonable expectation. Their reliance on the then-existing law and WIS. STAT. § 59.69(10)(a) to protect their investment in establish-

693

ing the new use is not reasonable. The purpose of § 59.69(10)(a) is to protect a use where substantial rights would be adversely affected if the use was discontinued and to do so in a way that restricts, rather than encourages, nonconforming uses. This purpose is undermined if a business owner may avail himself or herself of the protection of the statute by establishing a use after learning that it will soon be prohibited. It is unreasonable to construe the statute to protect such a use.

¶ 44. This conclusion is consistent with the law in many other jurisdictions that have a requirement that, in order to establish a nonconforming use entitled to protection, the owner must have begun the use, or made the investment for the use, in "good faith." *See* AMERICAN LAW OF ZONING § 12:34; RATHKOPF'S § 72:16. In a number of these jurisdictions, courts have held that an owner does not act in good faith, and thus a new use is not entitled to protection, when the owner acts with knowledge that there is going to be a change in the law that will prohibit the new use. *See Thompson v. Vill. of Hinsdale*, 617 N.E.2d 1227, 1237 (Ill. App. Ct. 1993); *Glickman v. Parish of Jefferson*, 224 So. 2d 141, 145 (La. Ct. App. 1969); *Hanchera v. Board of Adjustment*, 694 N.W.2d 641, 646 (Neb. 2005); *Biggs v. Town of Sandwich*, 470 A.2d 928, 931 (N.H. 1984); *Town of Hillsborough v. Smith*, 170 S.E.2d 904, 910 (N.C. 1969); *Clackamas County v. Holmes*, 508 P.2d 190, 193 (Or. 1973); *Penn Twp. v. Yecko Bros.*, 217 A.2d 171, 173–74 (Pa. 1966); *H.R.D.E., Inc. v. Zoning Officer of Romney*, 430 S.E.2d 341, 346 (W. Va. 1993).[18]

---

[18] The Town describes the "pending ordinance" doctrine of Pennsylvania as "formalizing the policy" expressed in *Penn Township v. Yecko Bros.*, 217 A.2d 171 (Pa. 1966). However,

¶ 45. The owners contend that it is an accepted practice for businesses to act to avoid the negative effect of a law change—such as a retail store having a sale before a sales tax increase. However, in this example and others cited by the owners, there is not a comparable requirement of having a vested interest in order to avoid the effect of a new law.

¶ 46. The owners also contend that business owners will not know what to do when a proposed ordinance amendment has a more uncertain status, such as when an amendment is proposed but tabled for an indefinite period. However, as a general matter, the dampening effect on establishing a particular new use while the zoning authority is considering limiting or prohibiting that use is not inconsistent with the purpose of WIS.

Pennsylvania's "pending ordinance doctrine" is distinct from the good faith requirement discussed in *Yecko Bros.* and the other cases cited in this paragraph. Under the pending ordinance doctrine, which appears to be unique to Pennsylvania, the applicant may be refused a building permit if there is a pending ordinance that would prohibit the proposed use. *See* AMERICAN LAW OF ZONING § 12:25. We do not discuss the Pennsylvania cases the Town cites on the "pending ordinance doctrine."

We note that the owners cite to *North Nevada Co. v. Menicucci*, 611 P. 2d 1068, 1070 (Nev. 1980), in which the court held that, because a new adult book store was operating legally on June 17, 1977, the ordinance effective on July 1, 1977, could not be applied retroactively. However, that case does not discuss whether the owner had knowledge of the pending ordinance when he made investments to establish the new business. We have not located a case holding that an owner's knowledge of a pending change in the law is irrelevant to the determination whether a new use is entitled to protection as a nonconforming use. However, we have not attempted exhaustive research into the law of other states because we are satisfied that the issue is properly resolved based on Wisconsin case law.

STAT. § 59.69(10)(a). If there are particular circumstances making it reasonable for a business owner to invest in a use despite uncertainty about when or if a proposed change in the law will take effect, the reasonable reliance standard permits consideration of those circumstances.

¶ 47. Because we conclude that the owners did not reasonably rely on existing law when they made the expenditures and incurred the liabilities to establish an adult entertainment use of the premises, they did not acquire a vested interest by virtue of those investments and incurred liabilities, regardless of the amount.

¶ 48. We do not understand the owners to contend that, if we exclude consideration of those expenditures and liabilities, they nonetheless had a vested interest by virtue of the operating expenses for the DJ, dancers, and rented cubicles from February 11, 2005, to the effective date of the ordinance amendment. However, if this is the owners' argument, we reject it for the reasons we have just explained. A vested interest for purposes of a protected nonconforming use requires a reasonable reliance on the law existing when the operating expenses were incurred. That is lacking here.

## CONCLUSION

¶ 49. We conclude that, in order for a use to be protected as a nonconforming use under WIS. STAT. § 59.69(10)(a), the business owner must have a vested interest in the continuance of that use, meaning that, were the continuance of the use to be prohibited, substantial rights would be adversely affected. In the context of § 59.69(10)(a)—relating to trade and industry—this will ordinarily mean that there has been a substantial investment in the use or that there will be a substantial financial loss if the use is discontinued.

¶ 50. We also conclude that, in order to acquire a vested interest in a use for purposes of WIS. STAT. § 59.69(10)(a), the business owner must reasonably rely on the then-existing ordinance when making expenditures and incurring liabilities. In the circumstances of this case, we conclude that, because the owners knew of the pending ordinance amendment before they made expenditures and incurred liabilities to establish the use, they did not reasonably rely on the then-existing ordinance.

¶ 51. Accordingly, we affirm the summary judgment that the owners have not established a nonconforming use entitled to protection under WIS. STAT. § 59.69(10)(a).

*By the Court.*—Judgment and order affirmed.