## COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 5, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP346**

Cir. Ct. No. **2019CV3564**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

MEINHOLZ, LLC,

PLAINTIFF-APPELLANT,

V.

DANE TOWN BOARD OF ZONING APPEALS AND ADJUSTMENT
AND TOWN OF SPRINGFIELD,

DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Blanchard, P.J., Graham, and Nashold, JJ.

¶1 BLANCHARD, P.J. Meinholz, LLC, owns three contiguous parcels of land in the Town of Springfield (the "Town"), which are all subject to a zoning classification that prohibits quarrying (*i.e.*, nonmetallic mineral extraction).

Thus, quarrying the parcels would ordinarily be a "nonconforming use" of this land. Meinholz wants to use the parcels for quarrying, and toward that end it asked the Town Board to recognize quarrying as a legal nonconforming use of the parcels. The board voted in favor of the recognition requested by Meinholz. However, just under six months later, the board revisited the legal nonconforming use issue, and referred the issue to the Town's zoning administrator so that the administrator could make a "formal ruling." The zoning administrator determined that Meinholz does not have a right to quarry the subject parcels as a legal nonconforming use, contrary to the earlier recognition by the Town Board. Meinholz appealed the zoning administrator's decision to the Dane Town Board of Zoning Appeals and Adjustment (the "Appeals Board"), which affirmed the decision of the zoning administrator.

¶2 Meinholz commenced this action in the circuit court, seeking common-law certiorari review of the Appeals Board decision to affirm the zoning administrator. Meinholz does not advance any argument that the Town Board's recognition of quarrying as a legal nonconforming use of the parcels was substantively correct. Instead, Meinholz argues that the Appeals Board was bound by the Town Board's recognition as a valid, final, and unchallenged decision. The circuit court granted summary judgment to the Appeals Board, dismissing this claim. We affirm the circuit court on this issue. We conclude that the Town Board's recognition did not preclude the Appeals Board from addressing whether quarrying is a legal nonconforming use for the parcels, because the Town Board withdrew the recognition by unambiguously referring the issue to the zoning administrator. We reject Meinholz's alternative arguments that the Town Board's referral to the zoning administrator did not constitute a proper withdrawal of the

Town Board recognition, or that, if it did, the Appeals Board could not uphold the withdrawal because that would interfere with a vested right held by Meinholz.

¶3 As a separate claim in the circuit court, Meinholz sought a declaratory judgment that, due to the Town Board's recognition of a legal nonconforming right to quarry the subject parcels, the Town is equitably estopped from asserting that Meinholz cannot quarry the parcels. The circuit court granted summary judgment to the Town, dismissing this claim. Meinholz argues that this is the rare case in which a municipality may be estopped from enforcing a zoning rule. We disagree. Further, we separately conclude that the Town is not estopped because Meinholz fails to show that it reasonably relied on the Town Board recognition.

¶4 Accordingly, we affirm the circuit court's grant of summary judgment in favor of the Appeals Board and the Town.

## BACKGROUND

¶5 To put the factual and procedural history of this case in context, we now briefly summarize the law that generally governs legal nonconforming uses of land and relevant historical legal developments regarding quarrying in Dane County, in which the Town is located, before turning to the facts of this case.

¶6 "Nonconforming land uses" are uses that violate a zoning rule that applies to the land. *See Schroeder v. Dane Cnty. Bd. of Adjustment*, 228 Wis. 2d 324, 339, 596 N.W.2d 472 (Ct. App. 1999). The nonconforming use doctrine recognizes the unfairness that typically arises when a new zoning rule bars an established use that was previously permitted. Under the doctrine, an existing land use continues to be lawful, and cannot be prohibited by a zoning rule enacted after

a use has been established, if the preexisting use was lawful before the enactment of the local zoning rule that rendered the use nonconforming. *See* WIS. STAT. §§ 59.69(10)(ab)-(am), 60.61(5)(ab)-(am) (2019-20).[1] The nonconforming use doctrine is rooted in underlying constitutional law, and it is also codified in statutes—such as in § 60.61(5), which applies to towns. *See Town of Cross Plains v. Kitt's "Field of Dreams" Korner, Inc.*, 2009 WI App 142, ¶¶18-19, 30, 321 Wis. 2d 671, 775 N.W.2d 283 ("statutory nonconforming use provisions arise out of the same [constitutional] concern for retroactive application of zoning laws and ordinances").

¶7    It is undisputed that Dane County zoning rules applied in the Town in 1968. *See Schroeder*, 228 Wis. 2d at 326. In that year, the county adopted an ordinance providing that, if an identified parcel of land was registered with and approved by county zoning authorities as a quarrying site, then quarrying would be deemed a legal nonconforming use for that site. *See id.* at 326-27, 339-340. We refer to the list of parcels that resulted from this process as "the Dane County registration."

¶8    For purposes of this case, the Dane County registration interacts with a separate, court-created doctrine called the "diminishing assets rule." *See id.* at 331. The diminishing assets rule is designed to address the fact that a single quarrying operation (sometimes referred to as a nonmetallic mineral extraction, or mining, operation) is often planned for a larger area than the limited area in which initial extraction occurs. *See id.* at 331-32. Wisconsin courts adopted the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

diminishing asset rule beginning in 1987 to address some circumstances in which extraction operations are planned for land that is contiguous to land that had previously been lawfully and actively quarried, including land that qualifies for legal nonconforming extraction. *See **Smart v. Dane Cnty. Bd. of Adjustments***, 177 Wis. 2d 445, 453-54, 501 N.W.2d 782 (1993) (discussing rule's adoption in ***Sturgis v. Winnebago Cnty. Bd. of Adjustments***, 141 Wis. 2d 149, 413 N.W.2d 642 (Ct. App. 1987)). Under the diminishing asset rule, "when a single owner has contiguous parcels on which an excavation operation is in existence, all land which constitutes an integral part of the operation is deemed [to be] 'in use'" as a legally nonconforming quarry, despite "the fact that a particular portion [of the land] may not yet be under actual excavation." *See **Sturgis***, 141 Wis. 2d at 154.

¶9      As would be expected, adoption of the diminishing asset rule had an effect on some parcels that were contiguous to other parcels which qualified as legal nonconforming uses based on the Dane County registration. As this court has explained, the effect was to expand the land available for legally nonconforming mineral extraction beyond the boundaries of the parcels included in the Dane County registration—allowing quarrying as a legally nonconforming use on some unregistered parcels. *See **Schroeder***, 228 Wis. 2d at 340-41.

¶10      However, as we further explained in ***Schroeder***, the diminishing asset rule "is not an unlimited definition and does not automatically permit expansion of a mineral extraction operation to every portion of every contiguous parcel owned by the operator." ***Id.*** at 341. Specifically, the rule applies only to land that is deemed to be "an integral part of the operation," which is defined to be land that is owned in common with, and contiguous to, other parcels where quarrying is lawful, so long as the then-owner intended, as of the commencement

of the zoning prohibition on quarrying, to expand quarry operations to include the land. *See id.*; *Sturgis*, 141 Wis. 2d at 153-54.

¶11   We turn now to the land at issue here. Meinholz owns land located within the boundaries of the Town consisting of multiple contiguous parcels, among them the three subject parcels. There is no dispute that, at all pertinent times, the subject parcels have been zoned in a way that prohibits as-of-right quarrying.

¶12   With all of that as background, the question at the heart of the pertinent decisions made by the Town Board, the zoning administrator, and the Appeals Board was the following: Do the subject parcels qualify for the legally nonconforming use of quarrying through the application of the diminishing asset rule to nearby parcels, given that those other parcels have been actively quarried, are covered by the Dane County registration, or both?

¶13   Returning to the factual background, an operating company separate from Meinholz has quarried portions of the larger whole of land owned by Meinholz, or at least has registered some of it for quarrying use under the Dane County registration rule.[2] Pertinent here, this quarrying activity or registration did

---

[2] Following the parties, we assume without deciding for purposes of this appeal that Meinholz, the owner of the subject parcels and other land contiguous to the subject parcels, should be treated as indistinguishable from Yahara Materials, the operating company that has in the past quarried portions of Meinholz's land (other than the subject parcels) and currently seeks to quarry the subject parcels.

To clarify, Meinholz in its briefing on appeal asserts that Yahara Materials is "related" to Meinholz in some manner. At oral argument in this court, Meinholz took the position that Yahara has represented Meinholz's interests in the manner of an agent. But the Appeals Board found, based on the record before it, that the "historic relationship between Meinholz[]" and various entities including Yahara Materials "has not been established." Meinholz does not argue that any of the Appeals Board's findings lacked the support of substantial evidence, but instead challenges

(continued)

6

not include the subject parcels. That is, the subject parcels were not included in the Dane County registration, nor have they been the site of active quarrying at least since 2009. From 2009 to 2017, the subject parcels did not belong to Meinholz, and thus, during that period, were not commonly owned with the portions of Meinholz's land that was actively quarried or registered for that use during that period.[3] Further, according to the Appeals Board's findings, which Meinholz does not argue lacked substantial evidentiary support, this separate entity intended for a time to develop the subject parcels for residential dwellings, although the planned development did not go forward. Meinholz bought the subject parcels in 2017, placing them once again in common ownership with the contiguous land used for or registered for quarrying.

¶14    In December 2018, Meinholz submitted a request to the Town. The request was that the Town Board "recognize" the "zoning status" of the subject parcels, which Meinholz contended would allow the parcels to be used for quarrying. To that end, Meinholz submitted a memorandum and other materials in support of the argument that, while the subject parcels were not zoned for

---

only the ability of the board to make its findings in the first instance. However, we assume this issue in Meinholz's favor for purposes of resolving this appeal.

[3] Turning to the even earlier period, Meinholz did not own the subject parcels prior to 2009. Instead, the certiorari record shows that the parcels belonged to a trust that was apparently affiliated with the owners of a Meinholz family farm, the boundaries of which historically corresponded to roughly the area that is now commonly owned by Meinholz. As noted, the Appeals Board found that the record is unclear on the topic of the relationship between Meinholz and this trust and between Meinholz and other members of the Meinholz family who at various times owned land relevant to Yahara's quarrying activity. Apparently Meinholz takes the position that it has provided evidence sufficient to establish that various other owners of the larger whole of relevant land were predecessors in interest to Meinholz. However, as we note elsewhere, Meinholz does not advance an argument disputing the Appeals Board's conclusions that temporary separation of the subject parcels from this common ownership could undermine Meinholz's ability to show that it came into possession of pre-existing nonconforming use rights for the subject parcels.

quarrying, they qualify for that legal nonconforming use. After reviewing this information, an attorney for the Town recommended to the Town Board that it adopt a motion recognizing that Meinholz has a right to "exp[a]nd" its quarrying operation to include the subject parcels, based on "the rules which apply to determining the extent of a non-conforming use."

¶15 On December 18, 2018, at a public meeting, the Town Board voted to adopt the following motion, using language proposed by the attorney:

> [T]he Town of Springfield finds, on the basis of information provided by [Meinholz] and attached to this Motion, that the entire parcel shown in [Meinholz's] property description is part of the area which was registered as a non-metallic mineral extraction site under applicable Dane County Ordinances. Accordingly, the mineral extraction operation may be carried out throughout the entire property to the extent permitted by regulations applying to mineral extraction.

We call this "the Town recognition." Aspects of the Town recognition are unclear. However, the Town and the Appeals Board now do not dispute that this language, when construed in the context of the letter from the Town Board's attorney, purported to "find[]" that the subject parcels qualify for legal nonconforming use as quarry land. In any event, we assume that this was the intended effect of the Town recognition, though we note that this is no small assumption in Meinholz's favor.[4]

---

[4] Facially problematic is the statement in the Town recognition "that the entire parcel shown in [Meinholz's] property description is part of the area which was registered as a non-metallic mineral extraction site under applicable Dane County Ordinances." Whether "the entire parcel" is understood to be the larger whole of Meinholz's property in the Town, or instead only the subject parcels, "the entire parcel" cannot be said to have been registered with Dane County. Only two parcels within the larger whole of the Meinholz land were registered, neither of them among the subject parcels. In order for this language to support Meinholz's position, it would have to be interpreted to implicitly include a phrase similar to "as expanded under the

(continued)

8

¶16     However, during a public meeting on May 21, 2019, the Town Board revisited the topic addressed in the Town recognition, as a result of questions and concerns raised by area residents, including that the recognition was based on incomplete information. "As a result of questions and comments received from residents during the discussion," the board explained, it would "pursue additional information," and later hold a "special meeting" regarding the Town recognition.[5]

¶17     At the special meeting, held on June 5, 2019, Meinholz representatives provided the Town Board with additional information regarding the history of the subject parcels and contiguous land owned by Meinholz. The board passed a motion "to ask the Town's zoning administrator to make a formal ruling as to whether the additional 40 acres that we voted on, on December 18th, is or is not a non-conforming mineral extraction site."[6]

---

diminishing asset rule." Such a phrase would make clear that the "entire parcel" consists of land that was contiguous with the registered parcels. In addition, the text lacks any reference to the particular requirements of the diminishing asset rule, such as the intent to quarry and common ownership at relevant times.

[5] We now mention an oddity in the record to clarify various references in this opinion and to assist anyone coming behind us, but the oddity does not affect our analysis of any issue. Consistent with our discussion to this point, the minutes of the May 2019 meeting contain a reference to the Town recognition as involving the nonconforming status of "three parcels" as requested by Meinholz. However, the minutes discuss the prospect of a later special meeting involving "the 40 acres," which at least on its face appears to be a reference to only the largest of the subject parcels. Similarly, the written decisions of the Town's zoning administrator and the Appeals Board make references to only the largest of the subject parcels, though the Appeals Board also addressed what it referred to as "Add[itional] Parcel 1" and "Add[itional] Parcel 2" in reference to the smaller subject parcels. No party develops an argument that these references support any argument advanced on appeal and we address the topic no further.

[6] "The Town Zoning Administrator is the administrative and enforcement officer for the provisions of" the Town's zoning ordinance. *See* TOWN OF SPRINGFIELD, WIS., ORDINANCES ch. 11, § 1.091 (2019) (https://www.town.springfield.wi.us/ordinances/chapter-11)

(continued)

¶18 The zoning administrator undertook this request for a "formal ruling," and determined that Meinholz's existing quarry operations "may not be expanded onto the 40-acre parcel without authorization of a Conditional Use Permit" from the town. In other words, quarrying was not a legal nonconforming use of the subject parcels and would therefore require a conditional use permit allowing quarrying in order to overcome the zoning prohibition.

¶19 Pursuant to a Town ordinance, Meinholz appealed the zoning administrator's decision to the Appeals Board.[7] Based on reasoning that we describe below, the Appeals Board affirmed the administrator.

¶20 Meinholz commenced this action in the circuit court. Meinholz sought certiorari review of the Appeals Board's decision affirming the zoning administrator. Pertinent to this appeal, Meinholz argued that the Appeals Board exceeded its jurisdiction and acted contrary to law.

¶21 Meinholz made a separate claim in the circuit court for declaratory judgment against the Town. Meinholz sought a declaration that the Town recognition is binding on the Town and, therefore, as a result of that recognition, quarrying is a legal nonconforming use of the subject parcels.

("SPRINGFIELD ORDS."). All references to the Town of Springfield's zoning ordinance are to the version incorporating revisions up to October 2019. *See* SPRINGFIELD ORDS. ch. 11.

[7] We briefly explain the nature of the Appeals Board in relation to the Town, because the nomenclature could be confusing. The Appeals Board was jointly created by the Town of Springfield and other municipalities in Dane County when they opted out of having zoning matters handled at the county level. *See* WIS. STAT. § 60.23(34) ("Town withdrawal from county zoning"), WIS. STAT. § 66.0301(2) (authorizing "any municipality" to "contract with other municipalities … for the … joint exercise of any power or duty … authorized by law"). The tasks of the Appeals Board include addressing appeals of local zoning determinations, including those made by the Town's zoning administrator. *See* SPRINGFIELD ORDS. ch. 11, § 1.093(3)(a).

¶22    Meinholz moved for summary judgment on both its certiorari and declaratory claims and the Town and Appeals Board jointly moved for summary judgment dismissing both claims.

¶23    The circuit court denied Meinholz's motions for summary judgment, granted the defendants' motions for summary judgment, and dismissed both claims.    Regarding the certiorari claim against the Zoning Board, the court determined that, under the Town's ordinances, the zoning administrator and not the Town Board was empowered to identify land as having nonconforming use status, and accordingly the Town Board had been "wrong" to approve the Town recognition.    The court further reasoned that the Town Board "was quick to recognize its mistake" and "reopened the question" of the subject parcels' nonconforming use status at its May 2019 meeting, which rendered the Town recognition non-final within the six month period in which an aggrieved party could have petitioned for common-law certiorari review of the Town recognition.

¶24    Regarding Meinholz's estoppel argument in the declaratory judgment claim, the court ruled that the Town's actions did not fit an exception to the general rule that estoppel will not lie against a municipality in the zoning context.

¶25    Meinholz appeals dismissal of each of its two claims.

## DISCUSSION

¶26    Meinholz argues that the circuit court erred in denying its motions for summary judgment and by granting the defendants' motions for summary judgment.    After providing our standard of review, we first address the certiorari issue and then the estoppel issue.

11

¶27    "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶19, 291 Wis. 2d 259, 715 N.W.2d 620 (quoting WIS. STAT. § 802.08(2)).    "We review summary judgment de novo, viewing the facts in the light most favorable to the non-moving party … and making all reasonable inferences in [the non-moving party's] favor." *See id.* This standard of review includes the circuit court's decision to dismiss Meinholz's declaratory claim on summary judgment. *See Olson v. Town of Cottage Grove*, 2008 WI 51, ¶¶33-34, 309 Wis. 2d 365, 749 N.W.2d 211.

## I.  Certiorari Review Of Appeals Board Decision

¶28    Meinholz does not advance an argument that the Town Board's recognition of quarrying as a legal nonconforming use of the parcels was substantively correct.  Instead, its argument is focused on the legal effect of the recognition.  The argument is that, before the Appeals Board made its challenged decision affirming the zoning administrator, the Town recognition had become a fixed legal right that Meinholz could not be deprived of.  For this reason, Meinholz argues, the Appeals Board erred by undertaking any review of the topic addressed by the Town recognition.

¶29    As one aspect of its fixed-legal-right argument, Meinholz poses a hypothetical.  The hypothetical is that the validity of the Town recognition *could have been* challenged, by some person or entity, in the circuit court through a common-law certiorari action (not to be confused with Meinholz's actual common-law certiorari claim against the Appeals Board).  Meinholz notes that

there is a six-month limitation period within which an adverse government action may be challenged through common-law certiorari. *See Eternalist Found., Inc. v. City of Platteville*, 225 Wis. 2d 759, 776 n.4, 593 N.W.2d 84 (Ct. App. 1999) (citing *State ex rel. Enk v. Mentkowski*, 76 Wis. 2d 565, 575-76, 252 N.W.2d 28 (1977)) ("Petitions for common law certiorari review are generally barred if not filed within six months of the adverse governmental action."). Using these concepts as its raw material, Meinholz argues that, because no one brought a certiorari claim challenging the Town recognition within six months of its passage, this precluded the Appeals Board from addressing issues purportedly resolved with finality by the Town recognition.

¶30 Also as part of the fixed-legal-right argument, Meinholz apparently contends that the Town Board did not use proper terminology to effectuate a withdrawal of the Town recognition, and therefore the recognition stands, fixed and unchanged.

¶31 As an alternative fixed-legal-right argument, Meinholz contends that it has a vested right that must be honored. That is, Meinholz argues that the Town Board could not validly withdraw its recognition and request that the zoning administrator decide the issue, because the Town recognition identified, or conferred on the subject parcels, a right to quarry that had "vested," and therefore the right could not be disturbed by the Town Board reconsidering itself.

¶32 We turn now to arguments by the Appeals Board that are pertinent to issues we deem dispositive. The Appeals Board defends the substance of its findings and conclusions that the subject parcels did not in fact qualify for legal nonconforming use status for quarrying. The Appeals Board makes several arguments on the topics of fixed or vested rights, including that the Town

recognition was akin to an invalid permit and therefore could not have conferred any rights, vested or otherwise.

¶33    The following standards apply throughout our analysis of this issue. In our common-law certiorari review, we review the decision of the Appeals Board and not that of the circuit court. *See Bratcher v. Housing Auth. of City of Milwaukee*, 2010 WI App 97, ¶10, 327 Wis. 2d 183, 787 N.W.2d 418. This review is limited. We determine only if the Appeals Board kept within its jurisdiction and acted according to law. *See Town of Delafield v. Winkelman*, 2004 WI 17, ¶30, 269 Wis. 2d 109, 675 N.W.2d 470. Meinholz does not argue that the Appeals Board acted arbitrarily, oppressively, or unreasonably, or in accordance with "its will and not its judgment," or that there was insufficient evidence for the Appeals Board to reasonably make its decision. *See id.*

¶34    As the petitioner for certiorari review, Meinholz bears the burden to overcome the presumption that the Appeals Board's decision was correct and valid. *See Ottman v. Town of Primrose*, 2011 WI 18, ¶48, 332 Wis. 2d 3, 796 N.W.2d 411; *State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶13, 269 Wis. 2d 549, 676 N.W.2d 401. Whether the Appeals Board proceeded on a correct theory of law is a question of law that is subject to de novo review. *See Moreschi v. Village of Williams Bay*, 2020 WI 95, ¶15, 395 Wis. 2d 55, 953 N.W.2d 318.[8]

---

[8] Meinholz also argues that the Appeals Board decision is "not entitled to a presumption of correctness" and makes the related argument that the decision is "not entitled" "to any deference" on issues of law. We disagree with aspects of these arguments and agree with other aspects.

As to the "presumption of correctness," our supreme court explained in *Ottman* that this concept is "closely related to the concept of 'burden'" and does not necessarily speak to the

(continued)

*Nature Of The Town Recognition*

¶35    We begin our analysis by clarifying a core concept regarding the nature of the Town recognition.  As we now explain, the Town recognition did not create or confer a new right for Meinholz in the subject parcels.  We begin with this clarification because various of Meinholz's arguments appear to rest on the incorrect premise that the recognition created or conferred a fixed right to the legal nonconforming use of quarrying.  Meinholz does not support this premise and we reject it.

¶36    Towns naturally have the ability to recognize and, in proper circumstances, regulate nonconforming uses.  *See Schroeder*, 228 Wis. 2d at 339 (noting that under statute similar to WIS. STAT. § 60.61, counties have some "statutory authority to regulate nonconforming uses").  After all, as we have noted,

---

standard of review or level of deference given to particular conclusions made by the body being reviewed on certiorari, *i.e.*, how difficult it is for the presumption to be overcome on a particular issue.  *See Ottman v. Town of Primrose*, 2011 WI 18, ¶¶50-53, 332 Wis. 2d 3, 796 N.W.2d 411 (quoted source omitted).  Meinholz argues that other aspects of *Ottman* may one day be abrogated by our supreme court.  However, it remains good law today and therefore we are not free to ignore it.  *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997); *Grycowski v. Milwaukee Employees' Ret. Sys./Annuity & Pension Bd.*, 2021 WI App 7, ¶¶29 n.2, 30, 395 Wis. 2d 722, 953 N.W.2d 904; *see also Ottman*, 332 Wis. 2d 3, ¶¶63-65 (rejecting argument to apply then-existing framework for levels of deference to administrative agencies based on differences in municipal and agency contexts).  In any case, we do not understand Meinholz to argue that it does not bear the burden to show that the Appeals Board proceeded on an incorrect theory of law or failed to keep within its jurisdiction.

As to the level of deference owed to the Appeals Board in our legal analysis, we agree with Meinholz that we review questions of law independently from the determinations rendered by the Appeals Board or the circuit court.  *See Ottman*, 332 Wis. 2d 3, ¶54.  On a related note, as we explain in note 9 *infra*, we do not address arguments by the parties that would require us to interpret a "unique" Town ordinance.  *See id.*, ¶60 (when presumption of correctness is applied to municipality's interpretation of its own "unique" ordinance, as opposed to one that "parrot[s]" a statute, courts should defer to the interpretation if it is reasonable); *but see Tetra Tech EC, Inc. v. DNR*, 2018 WI 75, ¶108, 382 Wis. 2d 496, 914 N.W.2d 21 (ending practice of judicial deference to administrative agency legal conclusions).

a nonconforming use is a use that violates a zoning rule. *See Schroeder*, 228 Wis. 2d at 340 ("'[t]he spirit of zoning is to restrict rather than increase a non-conforming use and to eliminate such uses as speedily as possible'" (alteration in original; quoted source omitted)).

¶37 More specifically, pertinent statutes establish, and case law teaches, that towns have the ability to regulate nonconforming uses. For example, municipalities can register nonconforming uses, as Dane County did here. *See Schroeder*, 228 Wis. 2d at 339-40 ("The purpose of requiring registration of non-conforming uses [was] to establish [the] lawfulness [of the uses] and to provide the municipality [within which the land was located] with information on the nature and extent of the existing non-conforming use." (citing 8A Eugene McQuillin, MUNICIPAL CORPORATIONS § 25.182.10 (3d ed. 1994))); WIS. STAT. § 60.61(5)(b)-(c). As another example, towns can "enact ordinances that limit the change or extension of nonconforming uses." *See* § 60.61(5)(am) (town zoning ordinance "may prohibit the alteration of, or addition to, any existing … premises … to carry on an otherwise prohibited trade or industry within the district"); *see also Waukesha County v. Pewaukee Marina, Inc.*, 187 Wis. 2d 18, 27, 522 N.W.2d 536 (Ct. App. 1994) (upholding verdict supporting enforcement of zoning rules to prevent expansion of nonconforming marina that included changes in use). However, Meinholz fails to identify a basis for us to conclude that a town could *create or confer* a legal nonconforming use and we discern no basis.

¶38 Local zoning authorities have, at most, an incidental role in the creation of nonconforming use rights. While a change in zoning rules is required, nonconforming use status vests with land based on the fact that the land was used in a particular way during a relevant time. *See Kitt's*, 321 Wis. 2d 671, ¶¶20-30 (discussing when the actual or developing use of land creates a vested right in that

use, qualifying for legal nonconforming status in the event a zoning ordinance prohibits the use). We see no reason to doubt that a town's zoning powers require it to apply WIS. STAT. § 60.61(5)(am) to recognize whether specific land has a legal nonconforming use at a given time. But when a town provides such recognition, it is not creating or conferring the status. Instead, the town is simply recognizing the status, based on its view of the facts and law, for purposes of efficient and fair enforcement of the law. Such recognition can be properly justified only by the objective facts regarding how the land was used or developed before enactment of the ordinance that (when applied retroactively) prohibits the nonconforming use.

¶39 With this fundamental point in mind, we turn to the nature of Meinholz's original request. As properly understood, all that Meinholz *could* ask the Town Board to do was to recognize that a nonconforming use status, which existed as a function of pertinent common and statutory law, applied to use of the subject parcels. We assume without deciding that the Town Board had the authority to provide the recognition that it did under these circumstances, putting aside the issue of whether the recognition was a correct application of nonconforming use law (such as the diminishing asset rule) to the relevant facts. That is, we assume that the Town Board, in anticipation of a potential attempt to enforce its own ordinances and zoning rules, could conduct a vote on a proposed "recognition" as it did at Meinholz's request, addressing whether, under the Board's view of the facts and the law, the subject parcels had legal nonconforming use status for quarrying. But that assumption is entirely consistent with our clarification that the Town could not create or confer on the subject parcels a legal nonconforming use status.

¶40    On this basic concept, Meinholz appears to have nothing to contribute.  At times in its briefing, Meinholz contends that it has shown that the Town Board had the authority to issue the Town recognition, which is a point that we assume in its favor as we have just explained.  However, even on this authority topic, Meinholz's focus is on an argument that the zoning administrator did not have exclusive authority to decide whether the subject parcels had nonconforming use status—an argument that we do not need to address.[9]  Meinholz notes that, by statute, town boards are in "charge of all affairs of [their] town[s] not committed by law to another body or officer or to a town employee."  *See* WIS. STAT. § 60.22(1).  But Meinholz does not develop, from this general proposition about "all affairs" of towns, a supported argument that a town's recognition of a nonconforming use is an act unaffected by statewide legal principles regarding nonconforming uses, much less does it develop a supported argument that such a recognition creates fixed or vested rights.

¶41    Having discussed the merely incidental role that municipalities play in the creation of nonconforming use rights and their ability merely to recognize whether such rights exist, a set of issues can arise.  The issues involve whether and when such recognition can become binding or result in land owners gaining vested rights, or being able to estop a municipality from contradicting a recognition it has

_____

[9] This exclusive authority issue is one of two, related disputes by the parties that we do not address.  Explaining further, Meinholz argues that the Appeals Board erred in two ways that both relate to the Appeals Board's determination that it was not bound by the Town recognition: (1) deciding that the zoning administrator, and not the Town Board, had the authority under the Town's ordinances to determine the legal nonconforming use status of land within the Town; and (2) deciding that Meinholz's request for recognition misleadingly presented the Town with materially incomplete information.  We need not address these arguments because we conclude that the Town recognition did not bind the Appeals Board for the different reason we discuss in the text—namely, that the Town Board withdrew its recognition before the Appeals Board reviewed the zoning administrator's determination.

made. To be clear, in rejecting Meinholz's arguments regarding the preclusive effect of the Town recognition, we do not attempt to fully resolve these issues. Rather, we explain why we conclude that, under the circumstances here, Meinholz fails to show that the Appeals Board was bound by the Town recognition. With this clarification in mind, we now address whether the determination of the Town Board had a preclusive effect on the Appeals Board, addressing Meinholz's argument premised on the hypothetical certiorari action that Meinholz submits had to be pursued within six months and on its contention that the Town Board failed to withdraw the Town recognition.

### Preclusive Effect Of Town Recognition

¶42    As noted above, as part of its fixed-legal-right argument, Meinholz contends that the Town recognition bound the Appeals Board, because the recognition could have been challenged by some person or entity through common-law certiorari review within six months and it was not.[10] In its opening brief on appeal Meinholz takes the position that common-law certiorari review of the Town recognition was available because it was a product of a "quasi-judicial" process. *See Acevedo v. City of Kenosha*, 2011 WI App 10, ¶8, 331 Wis. 2d 218, 793 N.W.2d 500 ("Certiorari is used to test the validity of decisions made by administrative or quasi-judicial bodies."). However, by its reply brief and at oral argument, Meinholz shifted its position, contending that certiorari review could

---

[10] Neither party identifies a potential basis for statutory, as opposed to common-law, certiorari review in this context, and we do not address that topic.

Regarding the concept of a hypothetical challenge by some person or entity, this would apparently not have been Meinholz or the Town; Meinholz theorizes that the third party could have been a concerned Town citizen or the zoning administrator.

have been sought even if the Town Board's vote on the recognition had instead resulted from a "quasi-legislative" process.[11]

¶43 We assume in Meinholz's favor, without deciding the issue, that the Town recognition resulted from a process, whether it might be categorized as "quasi-judicial" or instead as "quasi-legislative," for which common-law certiorari review was available. *See Voters with Facts v. City of Eau Claire*, 2018 WI 63, ¶70, 382 Wis. 2d 1, 913 N.W.2d 131 ("'where there are no statutory provisions for judicial review, the action of a board or commission may be reviewed by way of certiorari'" (quoted source omitted)); *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 23, 34-35, 498 N.W.2d 842 (1993) (undertaking common-law certiorari review of county zoning board's decision interpreting county ordinance regarding repairs made to nonconforming buildings). As we now explain further, under the legal standards governing the reconsideration of decisions by municipalities and quasi-judicial bodies, which we conclude are dispositive on this issue, it does not matter whether the Town Board operated like a legislature or like a judge.

¶44 First, assuming that the Town Board operated as a legislative or quasi-legislative body, the general rule is that

---

[11] "A quasi-judicial body is defined as 'having a partly judicial character by possession of the right to hold hearings on and conduct investigations into disputed claims and alleged infractions of rules and regulations and to make decisions in the general manner of courts.'" *Schoen v. Board of Fire & Police Comm'rs of Milwaukee*, 2015 WI App 95, ¶19, 366 Wis. 2d 279, 873 N.W.2d 232 (quoted dictionary source omitted). Meinholz does not cite, and acknowledged at oral argument that it is not aware of, Wisconsin authority for the proposition that a municipal determination as to whether land has a nonconforming use right is a quasi-judicial act. We observe that, at least in the context of denying a petition to rezone, our supreme court has described the decision "to enforce a zoning ordinance" a "legislative act[]" that is discretionary. *See Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, ¶¶25, 28, 235 Wis. 2d 409, 611 N.W.2d 693.

> "a municipal corporation, like other legislative bodies, has a right to reconsider … its vote and [its] action upon questions properly pending before it, and … rescind its previous action provided vested rights are not violated and such rescission is in conformity with the law applicable to the government of the body."

*Jackson County v. DNR*, 2006 WI 96, ¶34, 293 Wis. 2d 497, 717 N.W.2d 713 (quoting *Edwards Realty & Fin. Co. v. City of Superior*, 250 Wis. 472, 477, 27 N.W.2d 370 (1947)).

¶45   Second, assuming that the Town Board acted as a "quasi-judicial body" pursuant to a statutory grant of authority (or more precisely, pursuant to the limits of that authority), the board possessed the "implicit" power to reconsider its decision. *See Schoen v. Board of Fire and Police Comm'rs of Milwaukee*, 2015 WI App 95, ¶19, 366 Wis. 2d 279, 873 N.W.2d 232.   This power of reconsideration has limits, but it generally allows the deciding body to ensure that its determinations are not based on mistake. *See id.*, ¶¶19-22.

¶46   Applying these legal principles, we conclude that the actions of the Town Board in May and June 2019—revisiting the issue addressed in the Town recognition and then promptly directing that the zoning administrator resolve the issue—were exercises of its authority to reconsider prior decisions. The May 2019 decision to hold a special meeting after gathering additional information was transparently premised on the possibility that additional facts could show that the Town recognition was based on mistake and therefore might require amendment or reversal. The board's referral to the zoning administrator in June, after receiving additional information, reinforced this understanding of the board's intent and the meaning of its actions. That is, Meinholz does not dispute that, by referring the matter to the zoning administrator for a "formal ruling" at the June 2019 meeting, the board considered the administrator free to reach a different

conclusion from the one that the board had reached in 2018. Further, Meinholz representatives attended the June 2019 meeting; there is no suggestion that any relevant action was hidden from them. Based on this record, Meinholz could not have reasonably relied on the expectation that the zoning administrator was certain to reach the same or a similar conclusion as that stated in the Town recognition.

¶47    Meinholz argues that, after expiration of the six-month limitation period to bring a certiorari action challenging an adverse government action, the reviewable act of a municipality "becomes unchallengeable by certiorari or collaterally in any other subsequent proceeding." It notes that, in *Firemen's Annuity and Ben. Fund of Milwaukee v. Krueger*, 24 Wis. 2d 200, 206-07, 128 N.W.2d 670 (1964), our supreme court concluded that the failure of a party to assert the merits of an argument in a certiorari challenge to an administrative decision precluded the party from raising the argument, or the argument from being "adjudicated collaterally" in a separate mandamus proceeding. To this authority, Meinholz could add support for the general proposition that, in at least in some contexts, failing to challenge a municipal or administrative decision through an available, direct form of review can preclude consideration of the issues addressed in the decision. *See Lindas v. Cady*, 183 Wis. 2d 547, 566-67, 515 N.W.2d 458 (1994) (claim pursuant to federal civil rights statute was precluded by an adverse decision by an administrative commissioner for which the claimant did not seek review in court). As noted above, in relying on these principles, Meinholz posits that the Town recognition could have been, but was not, challenged by a third party.

¶48    However, it is irrelevant to the issue here that in some circumstances the failure of a person or entity to bring a timely certiorari action can preclude a "collateral" attack on the underlying municipal decision. The issue here is

whether a municipality or quasi-judicial body can reconsider *its own* determination in advance of any administrative or judicial review. *See id.* at 564-65 ("'the extent of the power of an administrative body or agency to reconsider its own findings or orders has nothing to do with [the doctrine of claim preclusion]; the latter doctrine applies solely to courts'" (alteration and quoted source omitted)). At a minimum, given the timing of events here, Meinholz fails to show that the existence of the Town recognition precluded the Town Board itself from revisiting the issue, fewer than six months after passing the Town recognition, by directing the zoning administrator to provide a "formal ruling" on the same topic. On these facts, the Appeals Board's decision was not a collateral review at all. Instead, it was a procedural step in a chain of decisions that flowed directly from the pertinent actions of the Town Board between December 2018 and June 2019.

¶49 Moreover, given the timing of the reconsideration, Meinholz could not have reasonably viewed the Town recognition as a decision that could not be challenged or changed. Even if one assumes that the six-month limitation on certiorari review could prevent the Town Board from reviewing its own action, its decisions to revisit the issue and direct that a different municipal decision maker resolve it had the effect of withdrawing the Town recognition before that deadline was reached.

¶50 Meinholz does not argue that the Town Board's direction that the zoning administrator resolve the issue was an action that fell outside the scope of the Town Board's powers, or that it violated any applicable procedural rule or statute.[12] Indeed, Meinholz essentially acknowledges that the Town's ordinances

---

[12] Neither party addresses whether the Town Board's actions in May and June 2019 complied with pertinent procedural statutes or other rules. Meinholz bears the burden to show

(continued)

allowed the Town Board to ask the zoning administrator to make the nonconforming-use determination regarding the subject parcels. *See* SPRINGFIELD ORDS. ch. 11, § 1.091(2)(k) (zoning administrator's duties include "[a]ny other duties or responsibilities delegated by or assigned by competent authority").

¶51 We turn to Meinholz's argument that the Town Board failed to withdraw the Town recognition. This argument is presented in a conclusory fashion. As best we understand it, the argument is that, because the Town Board did not explicitly describe its action using a verb such "withdraw" or "rescind," it cannot be understood to have withdrawn or rescinded the Town recognition. Therefore, the argument apparently proceeds, the recognition and all the findings and conclusions that went into it remained in effect when the Appeals Board addressed the nonconforming use status of the subject parcels. But Meinholz does not provide legal authority, or even a logical argument, to support this formalistic, "magic words" interpretation of the Town Board's actions. Put differently, if the Town Board did not withdraw the Town recognition, Meinholz completely fails to explain what the Town Board did do when it referred the issue to the zoning administrator for resolution. For the reasons stated above we conclude that, no later than June 5, 2019, the Town Board in fact withdrew the Town recognition, taking the unambiguous position that it could be erroneous and subject to change, including complete reversal, in the judgment of the zoning administrator.

---

that the Appeals Board erred in treating the Town recognition as nonbinding, and it fails to develop an argument that the Town Board violated any rule in withdrawing the recognition and leaving resolution of the issue to the zoning administrator.

*Vested Right To Quarry*

¶52 We turn to Meinholz's arguments based on the alleged vesting of rights. It contends that, even if the Town Board's referral to the zoning administrator for a decision could be construed as a withdrawal of the Town recognition, the Town Board lacked authority to effect such a withdrawal because that would have deprived Meinholz of a vested right. *See **Jackson County***, 293 Wis. 2d 497, ¶33-34 (right of municipal corporation to reconsider a vote is limited by whether "vested" rights would be affected). Meinholz gives four alternative theories as to when it gained a vested right to use the subject parcels for quarrying, which we now summarize in the chronological order in which each would have arisen.

¶53 Meinholz's first theory is pegged to the vesting of the nonconforming use right itself. This would have occurred no later than when the subjects parcels were first zoned to prohibit quarrying, which was indisputably before the Town recognition. *See **Kitt's***, 321 Wis. 2d 671, ¶¶30-31 (statutory and constitutional protection of nonconforming uses prevents "retroactive application" of zoning rules from interfering with "vested interest in the continuation" of the preexisting use); ***Des Jardin***, 262 Wis. 48-49 (ordinances must be construed to avoid retroactive application as applied to rights that vested before enactment).

¶54 Meinholz's second alternative is that it gained a vested right at the moment the Town Board voted to approve the Town recognition.

¶55 As a third alternative, Meinholz points to early May 2019, when Meinholz submitted an application to county authorities for an amended reclamation permit, which was required before the subject parcels could be quarried.

25

¶56    As a fourth and final alternative on this topic, Meinholz contends that it gained a vested right in mid-June 2019, which was six months after the Town recognition, because no common-law certiorari claim challenging the Town recognition had been filed by anyone.  We address each theory in turn.

¶57    Regarding the first theory, that a right to quarry vested in the lead-up to the initial zoning of the subject parcels to prohibit quarrying, it is significant that Meinholz does not advance an argument directly challenging the merits of the Appeals Board's reasoning in affirming the zoning administrator's decision. Instead, Meinholz argues that the Appeals Board was bound by what Meinholz asserts must have been contrary findings of fact and conclusions of law that were apparent or implied in the Town recognition.[13]  But this argument fails for reasons we have discussed.  In sum, the Town Board withdrew its recognition within the time the recognition could have been challenged in a certiorari action and, in theory, reversed for failure to properly apply nonconforming use principles. Given those facts, Meinholz does not show that the Appeals Board erred in determining that it was not bound by the Town recognition.  This leaves us with no argument to contradict the Appeals Board's reasoning that the subject parcels

---

[13] At oral argument, Meinholz declined to concede that the Appeals Board could reasonably determine that the multi-year ownership of the subject parcels by an entity that planned to develop housing defeats Meinholz's claim that it retains nonconforming use rights to quarry the subject parcels.  However, throughout its briefing and at oral argument, Meinholz has based its refusal to concede this particular point exclusively on its assertion that the Town recognition created a fixed legal right that must have included implied findings by the Town Board that in some manner must have accounted for planned housing endeavor, and not based on any substantive error by the Town Board.  In sum, we discern no attempt by Meinholz to develop an argument that the Appeals Board erred in any respect in addressing the merits of the purported legal nonconforming use status of the subject parcels.  Instead, according to Meinholz, the Appeals Board made one misstep:  taking up an issue that it should have considered settled by the Town recognition.

did not have a nonconforming quarrying status by the time of Town recognition. We now summarize the Appeals' Board's reasoning in making that determination.

¶58    The Appeals Board concluded that the diminishing asset rule did not apply in Meinholz's favor.  The board reasoned that the material information before it failed to demonstrate an intent by the owner of the subject parcels, at any relevant time period, to expand mining operations into "contiguous, commonly owned parcels" as required by the rule.

¶59    Further, the Appeals Board noted a separate problem for Meinholz, involving the changes in ownership and plans for a housing development on the subject parcels, which the Appeals Board concluded amounted to abandonment of an intent to quarry the subject parcels.  That is, the board reasoned that the alienation of the subject parcels to a third party, which for several years attempted to develop housing on the land, constituted an abandonment of any right to quarry based on legal nonconforming status that could have existed.  *See* WIS. STAT. § 59.69(10)(am) ("If the nonconforming use is discontinued for a period of 12 months, any future use of the … premises … shall conform to the [county zoning] ordinance."); WIS. STAT. § 60.61(5)(am) (same, but for town zoning ordinances); *Village of Slinger v. Polk Properties, LLC*, 2021 WI 29, ¶¶8-9, 396 Wis. 2d 342, 957 N.W.2d 229 ("actual cessation" of nonconforming use with "an intent to abandon" it results in land having to be used according to zoning classification). The board concluded that "voluntary alienation of title," for purposes of allowing the subject parcels to be considered for the planned use of "residential development," "severed" any intent that may have existed to eventually expand quarrying operations into the land.

¶60    The Appeals Board also concluded that it undermined Meinholz's position that there was not relevant information in the record that clearly showed the relationship between Meinholz, which we assume without deciding is the current common owner of all of the pertinent land, and previous entities that had commonly owned the same land.

¶61    To repeat, Meinholz fails to undermine any of this reasoning. Accordingly, we reject the first alternative theory based on the Appeals Board's conclusion that, at least by the time Meinholz acquired the subject parcels in 2017, there was no right to quarry them based on legal nonconforming use status that could have been recognized by the Town Board or anyone else.

¶62    We now turn to Meinholz's second alternative theory based on a claimed vested right—namely, that it occurred as an immediate result of the issuance of the Town recognition. This issue is resolved by our discussion above. We have explained that the Town recognition could not create or confer the right. Meinholz fails to show how the Town's purported identification of an allegedly preexisting right could have caused that right to vest at the moment of recognition. Given this failure, the situation presented in *Jackson County* is readily distinguishable. In that case, our supreme court stated that the county lacked the power to rescind its action, in part because the action in question, the issuance of a deed, itself validly conferred a vested right. *See Jackson County*, 293 Wis. 2d 497, ¶35 (county could not rescind tax deed it had issued because issuance of the deed vested rights in owners of the deeded property).

¶63    Meinholz's third alternative vested rights argument is based on its filing of an application with the pertinent Dane County authority to amend Meinholz's existing "reclamation permit" to incorporate plans to quarry the

28

subject parcels. *See* WIS. STAT. §§ 295.12(1)(c), (3)(d) (requiring the Wisconsin Department of Natural Resources to establish statewide standards for nonmetallic mining including requiring mining operators to obtain reclamation permits), 295.13(1) (requiring counties to enact and administer ordinances regarding nonmetallic mining that are consistent with rules promulgated under § 295.12(1)). Meinholz asks us to extend the logic of the "building permit rule" to reclamation permits in the nonmetallic mining context. As explained below, a building permit application can establish a claimed vested right in an activity that the permit allows. Meinholz asks us to treat a reclamation permit application as analogous to a building permit application, creating a new "reclamation permit rule." Applied here, this new rule would create a vested right to quarry the subject parcels in early May 2019—before the Town Board referred the issue to the zoning administrator for resolution—when Meinholz submitted an application to amend its existing reclamation permit to further authorize operations on the subject parcels. We now provide additional background regarding the building permit rule and the specific nature of reclamation permits, before explaining why we reject this alternative permit-based vested rights argument.

¶64    The building permit rule grants to a property owner "the right to add or change a structure" when the owner has submitted to a municipality a building permit application that conforms to the pertinent zoning classification and building code which was in existence when the owner applied for the permit. *Golden Sands v. Town of Saratoga*, 2018 WI 61, ¶22, 381 Wis. 2d 704, 913 N.W.2d 118. However, "[v]ested rights … should only be obtained on the basis of strict and complete compliance with zoning and building code requirements, because a builder's proceeding in violation of applicable requirements is not reasonable." *Village of Hobart v. Brown County*, 2004 WI App 66, ¶30, 271 Wis. 2d 268, 678

N.W.2d 402. The rule "is an exception to the general policy that 'property owners obtain no vested rights in a particular type of zoning solely through reliance on the zoning'" as it exists at the time. *Golden Sands*, 381 Wis. 2d 704, ¶21 (alteration and quoted source omitted). The building permit rule is a "bright-line rule": if the submitted permit application "strictly conforms" to pertinent regulations at the time of submission, there is no need to inquire into whether the applicant has actually begun construction or made substantial expenditures at the time the regulations change in a way that would prohibit the planned building project. *See id.*, ¶¶18-20.

¶65     Turning to reclamation permit applications, nonmetallic mine operators applying for permits must provide information about the proposed mining site, pay a fee, and submit a reclamation plan. *See* WIS. ADMIN. CODE § NR 135.18-.19 (through March 2022).[14] The reclamation plan must conform to further regulatory provisions, which in turn require compliance with "state and local laws including those related to … zoning and land use." *See* WIS. ADMIN. CODE §§ NR 135.06(5), 135.18(2)(e).

¶66     Meinholz fails to provide legal support for the proposition that this court can or should extend the narrow building permit rule in a novel manner to an entirely different type of permit, and we reject this alternative argument on that basis.

¶67     It is true, as Meinholz notes, that the reclamation permit requirements noted above in some ways resemble the requirements for obtaining

---

[14] All references to the Wisconsin Administrative Code are to the March 2022 Register.

building permits.  *See, e.g.*, SPRINGFIELD ORDS. ch. 3, §§ 3.04, 3.08, 3.09, 3.10 (permit applications require building plans that conform to specified codes and payment of "completion deposit").  However, as Meinholz further acknowledges, the activity of quarrying is by its nature quite different from constructing a building.  *See Smart*, 177 Wis. 2d at 454 (contrasting "'the usual case of a business conducted within buildings'" with quarrying, a process in which "'the land itself is a mineral or resource'"; "'[i]t is in the very nature of [quarrying] that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed'" (quoted source omitted)).  Meinholz does not explain why the nature of quarrying should cut in favor of further expanding the availability of such land use through a "reclamation permit rule," or why a bright-line rule creating a vested right to quarry would not instead be better drawn so that vesting occurs when actual quarrying begins.  Meinholz merely poses a rhetorical question:  why should the construction of buildings be treated differently in this context than the quarrying of land?  At most this raises large public policy issues that Meinholz does not begin to actually address.

¶68    Moreover, even if we were to decide that threads in Wisconsin law point toward extending the building permit rule to apply analogously to reclamation permits, we would still reject Meinholz's argument for at least the following two reasons.  First, the building permit rule relates to the zoning regulations that were in effect at the time of the permit application, as distinct from the separate nonconforming use doctrine, which relates to vested property rights that cannot be limited by zoning.  *See Golden Sands*, 381 Wis. 2d 704, ¶¶18, 21-22.  As noted, here there is no dispute that the subject parcels consist of land that was not zoned to allow for quarrying when Meinholz submitted its reclamation permit application.

¶69 Second, applications for both building permits and reclamation permits require compliance with other applicable law, including zoning rules and the statutorily and common-law imposed limitations on those rules for nonconforming use. *See Village of Hobart*, 271 Wis. 2d 268, ¶30; WIS. ADMIN. CODE §§ NR 135.06(5), 135.18(2)(e). Assuming without deciding that a prospective quarry operator, in lieu of complying with the zoning at the time of the application, could base a permit application on some kind of judicial, quasi-judicial, or municipal recognition of nonconforming quarry rights, Meinholz still runs into problems that we have already discussed. Namely, Meinholz's initial request to the Town Board asked it to apply statewide legal standards involving rights that Meinholz has not shown were in the Town Board's power to create or convey, and requested a recognition that was still subject to challenge at the time Meinholz attempted to file its permit application. That is, while a definitive ruling by a municipal or judicial body regarding nonconforming quarrying rights might theoretically satisfy the requirement that reclamation permit applications comply with pertinent land use law, Meinholz does not show why the Appeals Board was required to view the Town recognition as such a ruling.

¶70 We turn to Meinholz's fourth, latest-in-time alternative theory that it obtained a vested right. Meinholz contends that the expiration of six months without a hypothetical third-party certiorari challenge to the Town recognition was the "death knell" to all claims that Meinholz did not have a nonconforming right to quarry the subject parcels. This argument also fails for reasons we have explained. Notably, Meinholz could not reasonably have considered the Town recognition to be fixed and beyond challenge before the Town Board withdrew it, and therefore the Town recognition did not have a preclusive effect on the Appeals Board as Meinholz contends.

¶71    Having rejected each of the alternatives that Meinholz offers as a basis to conclude that it had rights to quarry the subject parcels that purportedly vested before the Town Board withdrew the Town recognition, we discern no remaining argument by Meinholz that the Town Board acted outside of its power to reconsider that decision.

## II. Estoppel

¶72    In its declaratory judgment claim, Meinholz argues that the Town is equitably estopped from enforcing its zoning ordinance prohibiting quarrying the subject parcels because the Town recognition induced reasonable reliance by Meinholz to its detriment.  We conclude that the general rule barring assertions of estoppel against municipalities that would prevent the enforcement of zoning rules applies here, and that an exception to the general rule on which Meinholz relies is inapplicable.  Beyond that, we conclude that estoppel could not apply because it was not reasonable for Meinholz to rely on the Town recognition as establishing a right to quarry the subject parcels.

¶73    The doctrine of equitable estoppel has four elements:  (1) an action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance by the other, either through action or non-action; (4) which is to the detriment of the relying party.  *See **Affordable Erecting***, 291 Wis. 2d 259, ¶33.  If "material facts are uncontested," we review de novo whether the elements of equitable estoppel have been established.  *See **Randy A.J. v. Norma I.J.***, 2004 WI 41, ¶12, 270 Wis. 2d 384, 677 N.W.2d 630.

¶74    Meinholz argues that the elements of estoppel against the Town are met based on the following propositions:  (1) the issuance of the Town recognition was an act, (2) by the Town, against whom estoppel is asserted, (3) which caused

33

Meinholz to reasonably rely on the Town's recognition of its purported right to legal nonconforming use status by preparing an amended reclamation plan, and (4) this resulted in monetary losses and lost opportunity costs to Meinholz.

¶75 However, as Meinholz acknowledges, the general rule is that a private party cannot assert estoppel against a municipality seeking to enforce a violation of one of its zoning rules, regardless of whether the elements of estoppel might be met. *See Village of Hobart*, 281 Wis. 2d 628, ¶25 ("a municipality cannot be estopped from asserting a violation of its zoning ordinance in court"). "While municipal and other government units are not wholly immune from application of the doctrine of equitable estoppel," Wisconsin courts have been "firmly committed to the principle that estoppel 'will not lie against a municipality so as to bar it from enforcing'" ordinances enacted pursuant to municipal police powers that include zoning rules. *See City of Milwaukee v. Leavitt*, 31 Wis. 2d 72, 76, 78, 142 N.W.2d 169 (1966) (quoted source omitted); *see also Village of Hobart*, 281 Wis. 2d 628, ¶29 & n.9 (appellate courts "typically refuse[] to apply estoppel against the government when its application would interfere with the police power for the protection of the public health, safety, or general welfare").

¶76 Meinholz contends that this case fits within the exception to the general rule provided in *Russell Dairy Stores v. City of Chippewa Falls*, 272 Wis. 138, 74 N.W.2d 759 (1956), and as that case has been interpreted by subsequent case law. The Town disputes that *Russell Dairy* applies. We conclude that *Russell Dairy* is inapplicable here. We also conclude that, for many of the same reasons that *Russell Dairy* does not apply here, it was not reasonable for Meinholz to rely on the Town recognition as creating a right to quarry the subject parcels.

¶77    Our supreme court later provided this succinct summary of *Russell Dairy*:

> [A] City of Chippewa Falls[] ordinance prevented anyone from constructing a driveway by cutting or altering curbs. The plaintiff was granted a permit by the city council to construct a driveway that altered a curb, as he agreed to provide a concrete apron to replace it. The plaintiff constructed his driveway upon reliance on the permit. A few months later, the city council revoked the plaintiff's permit. This court applied the doctrine of equitable estoppel to prevent the city from revoking a permit that it had already granted. We also recognized that the plaintiff had gained a vested right in the permit, which could not later be revoked.

*Village of Hobart*, 281 Wis. 2d 628, ¶27 (citing *Russell Dairy*, 272 Wis. at 145-46). The court in *Russell Dairy* explained that when "'a building permit has been issued without fraud to one who has thereafter in good faith expended money in reliance thereon, such owner attains an interest in such permit which is in the nature of a vested right and under such circumstances such permit may not be arbitrarily revoked.'" *Russell Dairy*, 272 Wis. at 146 (quoted source omitted); *see also Willow Creek Ranch*, 235 Wis. 2d 409, ¶¶57-58 (contrasting the arbitrary revocation of a legally issued permit, as was at issue in *Russell Dairy*, with a municipality's decision to block the operation of a game bird farm based on the municipality's assertion of a zoning ordinance violation; determining in part that municipality was not equitably estopped from enforcing zoning ordinance).

¶78    We note that one statement by our supreme court, post-dating *Russell Dairy*, suggests that the general rule disfavoring the application of estoppel against municipal action is especially strong in the specific context of a municipality's ability to enforce a zoning ordinance. *See Village of Hobart*, 281 Wis. 2d 628, ¶25 ("a municipality *cannot* be estopped from asserting a violation of its zoning ordinance in court" (emphasis added)). This discussion in itself could

be interpreted to signal that the ***Russell Dairy*** exception may be limited to cases with facts tightly matching those in ***Russell Dairy*** itself.

¶79    At the same time, however, other supreme court discussion in this area suggests that the ***Russell Dairy*** exception may not be limited to applications tightly matching the facts there.  As discussed below, our supreme court has not explicitly overruled ***Russell Dairy***, opting instead to distinguish it based on the facts of later cases.  *See also* ***Village of Hobart v. Brown County***, 2004 WI App 66, ¶2, 271 Wis. 2d 268, 678 N.W.2d 402 ("when considering whether to issue an injunction for a zoning violation, a circuit court can apply equitable estoppel to bar a municipality from enforcing a zoning ordinance"), *aff'd*, 281 Wis. 2d 628, ¶2.  In addition, although ***Russell Dairy*** specifically involved estoppel of enforcement of a permit revocation, the estoppel in that case had the effect of preventing the municipality from enforcing its zoning ordinance.  We assume without deciding that, in rare circumstances, estoppel can lie against a municipality in asserting a zoning violation.  However, we now explain why we conclude that this is not such a circumstance.

¶80    Notably, subsequent decisions of our supreme court have concluded that ***Russell Dairy***'s application of estoppel against a municipality was distinguishable on two different grounds, each of which is significant here:  in ***Russell Dairy*** there was a vested right and there was not an unlawful land use.

¶81    Regarding the vested-right distinction, the driveway owner in ***Russell Dairy*** gained a vested right through the issuance of the permit, *see* ***Russell Dairy***, 272 Wis. at 145-46, unlike the property owners at issue in later cases.  *See* ***Village of Hobart***, 281 Wis. 2d 628, ¶28 (attempt to rely on building permit rule failed because the application did not conform to zoning requirements); ***Willow***

36

*Creek*, 235 Wis. 2d 409, ¶55 (property owner "had not acquired a vested right in the operation of its farm" on a particular agricultural zoning classification). For the reasons stated above, we reject Meinholz's arguments that it has gained a vested right here.[15]

¶82    Regarding the unlawful-land-use distinction, the permit issued in *Russell Dairy* "did not violate any law or the city's contract with the state." *Village of Hobart*, 281 Wis. 2d 628, ¶28; *see also* *Willow Creek*, 235 Wis. 2d 409, ¶57. Our supreme court has contrasted this with the facts in later cases in which owners sought to use their lands in ways that allegedly violated zoning ordinances. *See* *Village of Hobart*, 281 Wis. 2d 628, ¶28; *Willow Creek*, 235 Wis. 2d 409, ¶57. Here, there is no dispute that the zoning of the subject parcels prohibits quarrying and, again, Meinholz does not develop a substantive argument that it

---

[15] As an alternative to its multi-faceted vested-rights argument that we address in the previous section of the text of this opinion, Meinholz contends that the lack of a vested right should not defeat its equitable estoppel claim, but we need not resolve this issue. Explaining further, Meinholz argues that a land owner need not have obtained a vested right related to the land before the owner may properly assert equitable estoppel against a municipality in a zoning context. This is so, Meinholz argues, because a municipality cannot deprive a land owner of a vested right, regardless of whether estoppel might also lie against the municipality. Therefore, the argument proceeds, the availability of vested rights must provide *separate* protection for property owners, beyond that offered by the potential availability of estoppel. Taking this argument further, Meinholz contends that equitable estoppel "must … extend" to the situation in which "a property owner believes erroneously but in good faith that it has a vested right, or where an interest is less than vested," assuming that all the elements of estoppel are also met. Given the general rule disfavoring the application of estoppel to prevent municipalities from enforcing zoning rules, or a clear statement in *Russell Dairy* or later cases, we question whether there is room in Wisconsin law for such an argument. In any case, our rejection of Meinholz's estoppel argument does not rest solely on the absence of a showing that Meinholz at any point obtained a vested right to quarry the subject parcels. Rather, the absence of a vested right is merely one way in which the reasoning in *Russell Dairy* does not apply here to create an exception to the general rule against estoppel to prevent a municipality from enforcing zoning rules. As we explain in the text, this case involves the Town's assertion of a zoning rule, the merits of which Meinholz does not challenge, and Meinholz fails to show that it reasonably relied on the Town recognition during the pertinent time period.

can engage in quarrying as a nonconforming use beyond the argument we reject above that the Town recognition itself created or conferred a fixed right.

¶83 It is true, as Meinholz points out, that in cases such as *Village of Hobart* and *Willow Creek*, *another* basis to distinguish *Russell Dairy* was that the later cases involved the allegedly erroneous acts of individual employees or officers operating subordinate to municipal bodies. *See Village of Hobart*, 281 Wis. 2d 628, ¶¶25-26, 29; *Willow Creek*, 235 Wis. 2d 409, ¶¶50, 55-56; *Russell Dairy*, 272 Wis. at 142-43. In contrast here, Meinholz challenges acts by the municipality itself, acting through votes cast by its primary legislative body in a way that we assume to be valid. But to the extent that Meinholz may intend to argue that an act sought to be estopped *must* have been performed by an individual employee or officer in order to distinguish *Russell Dairy*, we are not persuaded that we can ignore other significant, relevant concerns expressed in the case law about estopping municipalities from enforcing their zoning rules. Meinholz directs us to case law addressing the negative effects of binding municipalities to the erroneous acts of individual, possibly rogue or misguided, officers. *See, e.g.*, *Willow Creek*, 235 Wis. 2d 409, ¶50 ("[b]inding municipalities to every representation made by subordinate employees would produce severe results" that include "[e]ndless litigation … over the words of those employees," delaying "important municipal decision"). However, this narrow focus by Meinholz on the actions of individuals fails to account for broader concerns animating the general rule against estopping municipal zoning enforcement. Specifically, case law also teaches that the ability of a municipality to protect the interests of its citizens, including their rights to rely on the proper enforcement of zoning ordinances, is a significant consideration in the context of an attempt to estop a municipality from enforcing zoning rules. *See Leavitt*, 31 Wis. 2d at 78 ("Issuance of [a] … permit

which violates [zoning] ordinance not only is illegal per se, but is injurious to the interests of property owners and residents of the neighborhood adversely affected by the violation."); *see also* **DOR v. Moebius Printing Co.**, 89 Wis. 2d 610, 638, 279 N.W.2d 213 (1979) ("estoppel may be available as a defense against the government if the government's conduct would work a serious injustice *and if the public's interest would not be unduly harmed by the imposition of estoppel*" (emphasis added)).

¶84    This public interest is squarely at issue here. As the Town argues, estopping the Town based on the Town recognition would effectively result in a court-ordered zoning change for Town land, contrary to the determination of the zoning administrator, as affirmed by the Appeals Board. This would occur outside of any procedure established by applicable statutes and the Town's ordinances to change zoning. *See* WIS. STAT. §§ 60.23(34)(c), 60.62(4); SPRINGFIELD ORDS. ch. 11, §§ 1.094-.095 (providing procedures for zoning map amendments and conditional use permits).

¶85    Taking these other concerns into account, we disagree with Meinholz that, under the circumstances here, the fact that the Town recognition was an act of the Town Board is dispositive of whether the Town is estopped from enforcing its ordinance. As we have noted, these circumstances include: Meinholz failing to dispute that the Town Board erred in concluding that Meinholz has the right to quarry the subject parcels as a legal nonconforming use for at least the reason of the separate transfer for a sustained period to an entity that intended to develop the land for housing; the Town Board using its power of reconsideration to withdraw this determination, after allowing Meinholz to be heard; and the Town Board doing so within the time period within which

Meinholz acknowledges the determination hypothetically could have been challenged in the circuit court on certiorari review.

¶86    Given these circumstances, Meinholz does not show that there is a "serious injustice" to it—indeed, fails to show any injustice at all—that must be balanced against the "public interest" in the enforcement of the town's zoning enforcement under applicable ordinances and statutes. *See Moebius Printing*, 89 Wis. 2d at 638-39. Meinholz makes the broad argument at one point that it would work "a serious injustice" to "sanction[ the] deprivation of constitutionally protected property rights." However, for reasons we have explained, Meinholz does not point to anything in the record demonstrating that it had "constitutionally protected property right[]" to quarry the subject parcels.

¶87    On a related note, Meinholz fails to direct us to evidence in the appellate record that could establish that the Town Board acted "arbitrarily" in referring the legal nonconforming use determination to the zoning administrator in response to allegations by citizens that the Town recognition was based on incomplete information. *See Willow Creek*, 235 Wis. 2d 409, ¶¶56-57 (decision to prevent operation of game bird farm due to zoning violation was not arbitrary despite town officer's informal advice that rezoning petition was not necessary to operate farm); *Russell Dairy*, 272 Wis. at 146 (municipality may not "'arbitrarily revoke[]'" permit "'issued without fraud'" that was relied on in good faith (quoted source omitted)).

¶88    Stepping back, these same considerations defeat Meinholz's claim that the elements of estoppel are met here, even without factoring in allegations, which were accepted by the Appeals Board, that Meinholz withheld material information from the Town in requesting the recognition. Specifically, Meinholz

fails to support the view, based on the items in the appellate record, that it would have been reasonable for Meinholz, over the course of about six months, to rely on the Town recognition as the final word as to whether the Town could enforce its zoning ordinance that prohibits quarrying the subject parcels.

## CONCLUSION

¶89     For all of these reasons, we affirm the circuit court's summary judgment decisions to dismiss Meinholz's certiorari challenge to the Appeals Board decision and Meinholz's request for declaratory judgment against the Town.

*By the Court*.—Judgment affirmed.

Not recommended for publication in the official reports.